**STATE OF WISCONSIN** : **CIRCUIT COURT** : **MILWAUKEE COUNTY**
**CIVIL DIVISION** 12CV006438

THE ESTATE OF JAMES FRANLIN PERRY,
by BETTIE A. RODGERS, Special Administrator,      **COMPLAINT**
 and
JAMES FRANKLIN PERRY JR. (A Minor)
                    Plaintiffs,

                                                 Case No.
        v.
CHERYL WENZEL, R.N.; DEPUTY KICKBUSH; NICOLE
VIRGO, R.N.; TINA WATTS, R.N.; SERGEANT
FATRENA HALE; SHERRIFF DAVID A. CLARK; KELLY
KIECKBUSCH; ABIE DOUGLAS; ANTHONY ARNDT;
SHEILA JEFF; DARIUS HOLMES; RICHARD E.
SCHMIDT;
MILWAUKEE COUNTY SHERRIFF'S DEPARTMENT
821 State Street
Milwaukee, WI 53233;
and
RICHARD LOPEZ; FRANK SALINSKY; STEPHON BELL;
MARGARITA DIAZ-BERG; ALEXANDER C. AYALA;
FROILAN SANTIAGO; KARL ROBBINS; CRYSTAL
JACKS; COREY KROES; RICK BUNGERT; LUKE LEE;
JACOB IVY; SHANNON D. JONES; RICHARD MENZEL;
EDWARD FLYNN; ROMAN GALAVIZ; VICTOR E.
BEECHER
MILWAUKEE POLICE DEPARTMENT
Police Administration Building
749 West State Street, P.O. Box 531
Milwaukee, WI 53201-0531
and
THE CITY OF MILWAUKEE, a municipal corporation
City Hall
200 East Wells St.
Milwaukee, WI 53202,
and
MILWAUKEE COUNTY, a municipal corporation
901 N. 9th Street, Room 306
Milwaukee, WI 53223
            Defendants.



FILED AND
AUTHENTICATED

O     JUN 0 8 2012     O

JOHN BARRETT
Clerk of Circuit Court

NOW COMES the above named plaintiffs, the Estate of James Franklin Perry, and James

Franklin Perry Jr. (a minor), by their attorneys, **GENDE LAW OFFICE, S.C.**, and as for their claims

for relief against the above named defendants, allege and shows the Court as follows:

## I. INTRODUCTION

1. This case involves the City of Milwaukee Police Department ("MPD") and the Milwaukee County Sherriff's Department's ("MCSD") methods of infringing on and violating the Constitutional and statutory rights of James Franklin Perry ("Perry"), causing his death. Perry died on the floor of the Milwaukee County Jail after the defendants named herein acted with deliberate indifference to his serious-acute-obvious medical condition by ignoring Perry, leaving him unattended and unassisted on the floor – despite the fact that Perry was gasping for breath, rolling back and forth, moaning and groaning in pain, and bleeding from the mouth. All the while, Perry was shackled and wearing a spit mask.

2. Perry was in serious-acute-obvious physical distress at the Police Administration Building, but he was offered no assistance, medical or otherwise. He had a spit mask placed over his face, was held on the floor by several defendants, and then was dropped in a cell where he continued to suffer and inch closer to death.     On September 13, 2010, Defendants named herein removed Perry from a holding cell at the Police Administration Building, and despite his serious-acute-obvious medical condition offered him no assistance, medical or otherwise, but instead transported Perry to the Milwaukee County Jail - where he was left on the floor. Despite his verbalized suffering, bleeding and having defecated himself, no member of the MCSD or the MPD offered Perry any assistance. Perry was left on the floor to die while MCSD and MPD personnel (Defendants named herein) simply walked away – one of which was playing solitaire on her computer.

3. Plaintiffs bring this action pursuant to Wis. Stat. § 895.03; Title 42 of the United States Code, Sections 1983 & 1985 for violations of the Perry's Eighth and Fourteenth Amendment rights under the United States Constitution and his rights under Article I, Sections One and Six, of the Wisconsin Constitution.

2

## II.  JURISDICTION

4.  This Court has subject matter jurisdiction over both the Federal and State Law Claims alleged herein.

## III.  VENUE

5.  Venue is proper in this judicial district pursuant to Wis. Stat. § 801.50(2) because most defendants reside in this district and because a substantial part of the events and omissions giving rise to the plaintiffs' claims occurred in the district.

## IV.  THE PARTIES

6.  The plaintiff, the Estate of James Franklin Perry represents the decedent James Franklin Perry, who serious-acute-obvious medical needs were neglected while he was in the custody of MPD/MCSD and therefore expired on the floor of the Milwaukee County Jail.

7.  Bettie A. Rodgers is the administrator of the Estate of James Franklin Perry with standing to bring this action on behalf of the Estate of James Franklin. Perry pursuant to Wisconsin Statute and Milwaukee County Case No:2010PR002059.

8.  The plaintiff, James Franklin Perry Jr., is the minor child of James Franklin Perry and is a citizen of the United States and a resident of the State of Wisconsin.

9.  Defendant, Cheryl Wenzel, R.N. ("Defendant R.N. Wenzel") is an adult citizen of the United States and a resident of the State of Wisconsin, and at all times material hereto, was employed by the MCSD as a Registered Nurse and was responsible for the safe, secure, and humane treatment of all inmates at the Milwaukee County Jail, including Perry, on the evening of September 13, 2010. Defendant R.N. Wenzel was aware of and observed Perry's serious-acute-obvious medical emergency, but took no action, medical or otherwise; to assist Perry until Perry had stop breathing and lay dead on the floor of the County Jail. Defendant Wenzel was deliberately indifferent to Perry's serious-acute-obvious medical needs and Constitutional Rights.

3

10. Defendant, Deputy Kickbush ("Defendant Kickbush") is an adult citizen of the United States and a resident of the State of Wisconsin, and at all times material hereto, was employed by the MCSD and was responsible for the safe, secure, and humane treatment of all inmates at the Milwaukee County Jail, including Perry, on the evening of September 13, 2010. Defendant Kickbush was in the pre-booking area of the County Jail when Perry was brought in and participated in carrying Perry into the pre-booking area and around the pre-booking area, but provided no assistance, medial or otherwise to Perry, despite Perry's serious-acute medical emergency and was deliberately indifferent to Perry's serious medical needs and Constitutional Rights.

11. Defendant, Nicole Virgo, R.N. ("Defendant R.N. Virgo") is an adult citizen of the United States and a resident of the State of Wisconsin, and at all times material hereto, was employed by the MCSD as a R.N. and was responsible for the safe, secure, and humane treatment of all inmates at the Milwaukee County Jail, including Perry, on the evening of September 13, 2010. Defendant R.N. Virgo was the first medical personal to observe Perry at the County Jail and simply walked away after thirty seconds and provided no assistance, medical or otherwise, to Perry despite Perry's serious-acute-obvious medical emergency and was deliberately indifferent to Perry's serious medical needs and Constitutional Rights.

12. Defendant, Tina Watts, R.N. ("Defendant R.N. Watts") is an adult citizen of the United States and a resident of the State of Wisconsin, and at all times material hereto, was employed by the MCSD and was the shift nurse supervisor on September 13, 2010 and was responsible for the safe, secure, and humane treatment of all inmates at the Milwaukee County Jail, including Perry, on the evening of September 13, 2010. Defendant R.N. Watts failed to properly train and supervise Defendant R.N. Virgo and Defendant R.N. Wenzel prior to and on September 13, 2010, and was deliberately indifferent to Perry's serious medical needs and Constitutional Rights.

4

13.    Defendant, Sergeant Fatrena Hale ("Defendant Hale") is an adult citizen of the United States and a resident of the State of Wisconsin, and at all times material hereto, was employed by the MCSD and was responsible for the safe, secure, and humane treatment of all inmates at the Milwaukee County Jail, including Perry, on the evening of September 13, 2010. Defendant Hale was the Sergeant on duty when Perry was brought in to the pre-booking area of the County Jail and despite the fact that Defendant Hale observed Perry rolling around on the floor groaning and could see Perry bleeding through the spit mask Defendant Hale provided no assistance, medical or otherwise, nor ordered her staff to provide any assistance to Perry and was deliberately indifferent to Perry's serious medical needs and Constitutional Rights.

14.    Defendant, Sherriff David A Clark ("Defendant Clark") is an adult citizen of the United States and a resident of the State of Wisconsin, and at all times material hereto, was the Sheriff of the MCSD and was responsible for the safe, secure, and humane treatment of all inmates at the Milwaukee County Jail, including Perry, on the evening of September 13, 2010. Defendant Clark, also oversaw supervised and had direct control over the management and operations of the entire Sheriff's Department, including the Milwaukee County Jail, and was responsible for the Department's policies and procedures as well as training. Defendant Clark was deliberately indifferent to the serious medical needs and Constitutional rights of Perry by allowing a lack of sufficient training and policies and procedures, written and unwritten, to place Perry, and other inmates in grave danger when they were suffering from serious-acute-obvious medical conditions.

15.    Defendant, Kelly Kieckbusch ("Defendant Kirckbusch"), is an adult citizen of the United States and a resident of the State of Wisconsin, and at all times material hereto, was employed by the MCSD and was responsible for the safe, secure, and humane treatment of all inmates, at the Milwaukee County Jail including Perry, on the evening of September, 13, 2010. Defendant Kieckbusch was assigned to coordinate medical treatment on the evening of September

5

13, 2010, but failed to provide Perry any attention, medical or otherwise, despite his serious-acute-obvious medical emergency and was deliberately indifferent to Perry's serious medical needs and Constitutional Rights.

16.    Defendant, Correctional Officer Abie Douglas ("Defendant Douglas"), is an adult citizen of the United States and a resident of the State of Wisconsin, and at all times material hereto, was employed by the MCSD and was responsible for the safe, secure, and humane treatment of all inmates, at the Milwaukee County Jail including Perry, on the evening of September, 13, 2010. Defendant Douglas was aware and observed Perry's serious-acute-obvious medical emergency, but failed to provide Perry any attention, medical or otherwise, despite his serious-acute-obvious-medical emergency and was deliberately indifferent to Perry's serious medical needs and Constitutional Rights.

17.    Defendant, Correctional Officer Anthony Arndt ("Defendant Arndt"), is an adult citizen of the United States and a resident of the State of Wisconsin, and at all times material hereto, was employed by the MCSD and was responsible for the safe, secure, and humane treatment of all inmates, at the Milwaukee County Jail including Perry, on the evening of September 13, 2010. Defendant Arndt was aware and observed Perry's serious-acute-obvious medical emergency, but failed to provide Perry any attention, medical or otherwise, despite his serious-acute-obvious medical emergency and was deliberately indifferent to Perry's serious medical needs and Constitutional Rights.

18.    Defendant, Correctional Officer Sheila Jeff ("Defendant Jeff"), is an adult citizen of the United States and a resident of the State of Wisconsin, and at all times material hereto, was employed by the MCSD and was responsible for the safe, secure, and humane treatment of all inmates, at the Milwaukee County Jail including Perry, on the evening of September, 13, 2010. Defendant Jeff was aware and observed Perry's serious-acute-obvious medical emergency, but failed

6

to provide Perry any attention, medical or otherwise, despite his serious-acute-obvious medical emergency and was deliberately indifferent to Perry's serious medical needs and Constitutional Rights.

19.     Defendant, Correctional Officer Darius Holmes ("Defendant Holmes"), is an adult citizen of the United States and a resident of the State of Wisconsin, and at all times material hereto, was employed by the MCSD and was responsible for the safe, secure, and humane treatment of all inmates, at the Milwaukee County Jail including Perry, on the evening of September, 13, 2010. Defendant Holmes was aware and observed Perry's serious-acute-obvious medical emeregemcy, but failed to provide Perry any attention, medical or otherwise, despite his serious-acute-obvious medical emergency and was deliberately indifferent to Perry's serious medical needs and Constitutional Rights.

20.     Defendant, Richard Lopez, ("Defendant Lopez"), is an adult citizen of the United States and a resident of the State of Wisconsin, and at all times material hereto, was employed by the MPD and was responsible for the safe, secure, and humane treatment of individuals in the custody of the MPD, including Perry, on the evening of September 13, 2010. Defendant Lopez transferred Perry from the Police Administration building to the floor of the Milwaukee County jail, but ignored and was deliberately indifferent to Perry's serious-acute-obvious medical emergency as Perry lay dying on the floor of the Milwaukee County Jail, and was deliberately indifferent to Perry's serious medical needs and Constitutional Rights.

21.     Defendant, Frank Salinsky ("Defendant Salinsky"), is an adult citizen of the United States and a resident of the State of Wisconsin, and at all times material hereto, was employed by the MPD and was responsible for the safe, secure, and humane treatment of individuals in the custody of the MPD, including Perry, on the evening of September 13, 2010. Defendant Salinsky transferred Perry from the Police Administration building to the floor of the Milwaukee County jail, but ignored

7

and was deliberately indifferent to Perry's serious-acute-obvious medical emergency as Perry lay dying on the floor of the Milwaukee County Jail, and was deliberately indifferent to Perry's serious medical needs and Constitutional Rights.

22.     Defendant, Stephon Bell ("Defendant Bell"), is an adult citizen of the United States and a resident of the State of Wisconsin, and at all times material hereto, was employed by the MPD and was responsible for the safe, secure, and humane treatment of all individuals in the custody of the MPD, including Perry, on the evening of September 13, 2010. Defendant Bell was assigned to sit in the processing section of the Milwaukee County Jail and assist officers conveying inmates. Defendant Bell participated in the carrying of Perry into the processing section of the County Jail, but simply walked away and ignored and was deliberately indifferent to Perry's serious-obvious-acute medical emergency. Bell also participated in an attempt to cover up the actual facts surrounding Perry's death and was deliberately indifferent to Perry's serious medical needs and Constitutional Rights.

23.     Defendant, Margarita Diaz-Berg ("Defendant Diaz-Berg"), is an adult citizen of the United States and a resident of the State of Wisconsin, and at all times material hereto, was employed by the MPD and was responsible for the safe, secure, and humane treatment of all individuals in the custody of the MPD, including Perry, on the evening of September 13, 2010. Defendant Diaz-Berg was the assistant jailer on the night of September 13, 2010 responsible for conducting fifteen minute checks on Perry while he was placed in the Prisoner Processing Section at the Police Administration building and despite Perry's bleeding, groans, grunts, and rolling around on the floor, Diaz Berg provided no assistance to Perry, medical of otherwise, and was deliberately indifferent to Perry's serious medical needs and Constitutional Rights.

24.     Defendant, Alexander C. Ayala ("Defendant Ayala"), is an adult citizen of the United States and a resident of the State of Wisconsin, and at all times material hereto, was employed by the

8

MPD and was responsible for the safe, secure, and humane treatment of all individuals in the custody of the MPD, including Perry, on the evening of September 13, 2010. Defendant Ayala was assigned to the Prisoner Processing Section of the Police Administration Builidng on September 13, 2010 and assisted in holding Perry down in the hallway of the Prisoner Processing Section while Perry groaned and screamed in pain – Ayala provided no assistance, medical or otherwise, despite Perry's serious-acute-obvious medical emergency and was deliberately indifferent to Perry's serious medical needs and Constitutional Rights.

25. Defendant, Froilan Santiago ("Defendant Santiago"), is an adult citizen of the United States and a resident of the State of Wisconsin, and at all times material hereto, was employed by the MPD and was responsible for the safe, secure, and humane treatment of all individuals in the custody of the MPD, including Perry, on the evening of September 13, 2010. Defendant Santiago observed the Perry had urinated and defecated himself on return from Sinai, but instead of offering or requesting medical attention for Perry, he proceeded to carry Perry to the elevator to be taken upstairs. Defendant Santiago was assigned to the Prisoner Processing Section of the Police Administration Building on September 13, 2010 and assisted in holding Perry down in the hallway of the Prisoner Processing Section while Perry groaned and screamed in pain – Santiago provided no assistance, medical or otherwise, despite Perry's serious-acute-obvious medical emergency and was deliberately indifferent to Perry's serious medical needs and Constitutional Rights.

26. Defendant, Karl Robbins ("Defendant Robbins"), is an adult citizen of the United States and a resident of the State of Wisconsin, and at all times material hereto, was employed by the MPD and was responsible for the safe, secure, and humane treatment of all individuals in the custody of the MPD, including Perry, on the evening of September 13, 2010. Defendant Robbins was the presiding officer in the Police Processing Section at Police Administration Building at the time of the unconstitutional treatment of Perry and therefore had supervisory control over the

9

officers/defendants on duty. Additionally Defendant Robbins was informed that Perry was not doing well at Sania, but instructed his officers to return Perry to the Police Administration Building, but took no action to assure Perry's serious-acute-obvious medical emergency was monitored. Defendant Robbins was told by Perry on the afternoon of September 13, 2010 that Perry has seizures and had not been taking his medication for this condition; Defendant Robbins took no action in regard to this information. Defendant Robbins was deliberately indifferent to Perry's serious medical needs and Constitutional Rights.

27.     Defendant, Crystal Jacks ("Defendant Jacks"), is an adult citizen of the United States and a resident of the State of Wisconsin, and at all times material hereto, was employed by the MPD and was responsible for the safe, secure, and humane treatment of all individuals in the custody of the MPD, including Perry, on the evening of September 13, 2010. Defendant Jacks assisted in carrying Perry to the Prisoner Processing Section of the Police Administration Building, holding him down on the floor, applying a spit mask, and dropping Perry on the floor of a holding cell, while providing no assistance, medical or other, despite Perry's serious-acute-obvious medical emergency. Defendant Jacks was deliberately indifferent to Perry's serious medical needs and Constitutional Rights.

28.     Defendant, Corey Kroes ("Defendant Kroes"), is an adult citizen of the United States and a resident of the State of Wisconsin, and at all times material hereto, was employed by the MPD and was responsible for the safe, secure, and humane treatment of all individuals in the custody of the MPD, including Perry, on the evening of September, 2010. Defendant Kroes assisted in carrying Perry to the Prisoner Processing Section of the Police Administration Building, holding him down on the floor, applying a spit mask, and dropping Perry on the floor of a holding cell, while providing no assistance, medical or other, despite Perry's serious-acute-obvious medical

10

emergency. Defendant Kroes was deliberately indifferent to Perry's serious medical needs and Constitutional Rights.

29. Defendant, Rick Bungert ("Defendant Bungert"), is an adult citizen of the United States and a resident of the State of Wisconsin, and at all times material hereto, was employed by the MPD and was responsible for the safe, secure, and humane treatment of all individuals in the custody of the MPD, including Perry, on the evening of September 13, 2010. Defendant Bungert observed that Perry had urinated and defecated himself on his return from Sinai, but instead of offering or requesting medical attention for Perry, he proceeded to carry Perry to the elevator to be taken upstairs. Defendant Bungert was assigned to the Prisoner Processing Section at the Police Administration Building on September 13, 2010 and assisted in holding Perry down in the hallway of the Prisoner Processing Section while Perry groaned and screamed in pain – Defendant Bungert provided no assistance, medical or otherwise, despite Perry's serious-acute-obvious medical emergency and was deliberately indifferent to Perry's serious medical needs and Constitutional Rights.

30. Defendant, Luke Lee ("Defendant Lee"), is an adult citizen of the United States and a resident of the State of Wisconsin, and at all times material hereto, was employed by the MPD and was responsible for the safe, secure, and humane treatment of all individuals in the custody of the MPD, including Perry, on the evening of September 13, 2010. Defendant Lee was assigned to the Prisoner Processing Section at the Police Administration Building on September 13, 2010 and assisted in holding Perry down in the hallway of the Prisoner Processing Section while Perry groaned and screamed in pain – Defendant Lee provided no assistance, medical or otherwise, despite Perry's serious-acute-obvious medical emergency and was deliberately indifferent to Perry's serious medical needs and Constitutional Rights.

11

31.    Defendant Police Aide Jacob Ivy ("Defendant Ivy"), is an adult citizen of the United States and a resident of the State of Wisconsin, and at all times material hereto, was employed by the MPD and was responsible for the safe, secure, and humane treatment of all individuals in the custody of the MPD, including Perry, on the evening of September 13, 2010. Defendant Ivy assisted in removing Perry from his cell at the Prisoner Processing Section at the Police Administration Building. Defendant Ivy provided no assistance, medical or otherwise, despite Perry's serious-acute-obvious medical emergency and was deliberately indifferent to Perry's serious medical needs and Constitutional Rights.

32.    Defendant, Shannon D. Jones ("Defendant Jones"), is an adult citizen of the United States and a resident of the State of Wisconsin, and at all times material hereto, was employed by the MPD and was responsible for the safe, secure, and humane treatment of all inmates, including Perry, on the evening of September, 13 2010. Defendant Jones engaged in the defendants' concerted attempt to cover up the true circumstances surrounding Perry's death; thereby violating Perry's Constitutional Rights.

33.    Defendant, Richard Menzel ("Defendant Menzel"), is an adult citizen of the United States and a resident of the State of Wisconsin, and at all times material hereto, was employed at MPD and was responsible for the safe, secure, and humane treatment of all inmates, including Perry, on the evening of September, 2010. Defendant Menzel engaged in the defendants' concerted attempt to cover up the true circumstances surrounding Perry's death; thereby violating Perry's Constitutional Rights.

34.    Defendant, Chief of Police Edward Flynn ("Defendant Flynn"), is an adult citizen of the United States and a resident of the State of Wisconsin, and at all times material hereto, was the Chief of the MPD, and was responsible for the safe, secure, and humane treatment of all individuals in the custody of the MPD, including Perry, on the evening of September 13, 2010. Defendant

12

Flynn, also oversaw supervised and had direct control over the management and operations of the entire MPD, including the Police Administration Building, and was responsible for the Department's policies and procedures as well as training. Defendant Flynn was deliberately indifferent to the serious medical needs and Constitutional rights of Perry by allowing a lack of sufficient training and policies and procedures, written and unwritten, to place Perry, and other inmates in grave danger when they were suffering from serious-acute-obvious medical emergencies.

35. Defendant, Deputy Inspector of Police – Professional Standards Bureau, Roman Galaviz ("Defendant Galaviz"), is an adult citizen of the United States and a resident of the State of Wisconsin, and at all times material hereto, was employed by the MPD, and was responsible for the safe, secure, and humane treatment of all individuals in the custody of the MPD, including Perry, on the evening of September 13, 2010. Defendant Galaviz, also oversaw supervised and had direct control over the professional standards of the entire MPD, and was responsible for the Department's policies and procedures as well as training. Defendant Galaviz was deliberately indifferent to the serious medical needs and Constitutional rights of Perry by allowing a lack of sufficient training and policies and procedures, written and unwritten, to place Perry, and other inmates in grave danger when they were suffering from serious-acute-obvious medical emergencies.

36. Defendant, Captain of Police – Training Division, Victor E. Beecher ("Defendant Beecher"), is an adult citizen of the United States and a resident of the State of Wisconsin, and at all times material hereto, was employed by the MPD, and was responsible for the safe, secure, and humane treatment of all individuals in the custody of the MPD, including Perry, on the evening of September 13, 2010. Defendant Beecher, also oversaw supervised and had direct control over the training of the entire MPD, and was responsible for the Department's policies and procedures as well as training. Defendant Beecher was deliberately indifferent to the serious medical needs and Constitutional rights of Perry by allowing a lack of sufficient training and policies and procedures,

13

written and unwritten, to place Perry, and other inmates in grave danger when they were suffering from serious-acute-obvious medical emergencies.

37. Defendant, Inspector Richard Schmidt ("Defendant Schmidt") is an adult citizen of the United States and a resident of the State of Wisconsin, and at all times material hereto, was employed by the MCSD and was responsible for the safe, secure, and humane treatment of all inmates at the Milwaukee County Jail, including Perry, on the evening of September 13, 2010. Defendant Schmidt is currently leading the Detention Services Bureau, which includes oversight of the medical, clerical, correctional officers, and sworn staff assigned to the Milwaukee County Jail. Defendant Schmidt also oversaw supervised and had control over the management and an operation of the entire Sheriff's Department, and was responsible for the Department's policies and procedures as well as training. Defendant Schmidt was deliberately indifferent to the serious medical needs and Constitutional rights of Perry by allowing a lack of sufficient training and policies and procedures, written and unwritten, to place Perry, and other inmates in grave danger when they were suffering from serious-acute-obvious medical emergencies.

38. Defendant, the City of Milwaukee, with offices at 200 East Wells St. Milwaukee, WI 53202, and offices of its Corporate Counsel, Grant F. Langley, at 200 East Wells Street, 800 City Hall, Milwaukee, WI 53202-3653, at all times material hereto, was a Municipal Corporation organized under the laws of the State of Wisconsin and was at all times responsible for training and supervising the employees of the MPD, and for the creation and implementation of policy and procedures for the MPD - an agent of the City of Milwaukee.

39. Defendant, Milwaukee County, with offices of its executive at 901 N. 9th Street, Room 306, Milwaukee, WI 53233, and offices of its Corporate Counsel, Kimberly Walker, located at 907 North 9th Street, Suite 303, Milwaukee, WI 53233, at all times material hereto, was a Municipal Corporation organized under the laws of the State of Wisconsin and was at all times responsible for

14

training and supervising the employees of the MCSD, and for the creation and implementation of policy and procedures of the MCSD - an agent of the City of Milwaukee.

40.     All of the defendants are sued in their individual and official capacities. At all relevant times, these defendants were acting under the color of state law; pursuant to their authority as officials, agents, contractors or employees of the State of Wisconsin; within the scope of their employment as representatives of public entities, as defined in 42 U.S.C. §12131(1), and were deliberately indifferent to the Constitutional, civil, and statutory rights of Miller.

## V.     FACTS

### PERRY'S FIRST SEIZURE AT THE POLICE ADMINISTION BUILDING

41.     That on September 13, 2010, Perry was in the custody of the MPD at the Police Administration Building in the bullpen when Perry tried to stand, but fell back against the wall and went limp. "He had a blank stare for about five seconds." Perry then fell to the floor striking his head "hard" on the concrete floor, at which point he began shaking. Prior to this time, Perry had informed the MPD and its employees that he required seizure medication twice a day. Perry never received this medication while in custody.

42.     That the Milwaukee Fire Department - EMS was contacted five minutes after the onset of Perry's Seizure.

43.     That Milwaukee Fire Department personal recorded, "Upon arrival found 41 year old [Perry] lying supine on the floor of holding cell with cushion placed under his head. **Per police, patient had suffered approximately one minute long full body seizure, fell off bench and hit head on the floor.**"

44.     That Perry was transferred via ambulance to Aurora Sinai by Bell Ambulance. Defendant Kroes rode in the ambulance with Perry, when Defendant Kroes attempted to speak to Perry – Perry said nothing and was not fully alert.

15

45.     When at the hospital Defendant Kroes observed, "Perry seemed like he was trying to say something. But he stopped talking midsentence." Defendant Kroes explained, '[Perry] froze, like a statute, for about 10 seconds. Then his eyelids began twitching. . . . [Perry] went into a full body seizure.

46.     The seizure, referenced in ¶41, lasted five minutes.

47.     After the seizure referenced in ¶41 Perry's breathing was shallow and fast. Perry was mumbling, but Defendant Kroes could not understand him.

48.     That subsequent to the seizure referenced in ¶41 Perry suffered a second seizure.

49.     Perry asked to use the bathroom, he seemed very tired. According to Defendant Kroes Perry had a much more difficult time walking to the bathroom; he was struggling to keep his balance.

50.     When it was time to leave Sinai, Defendant Kroes and Jacks attempted to wake Perry, but he kept falling back asleep. Defendant Kroes put on Perry's shoes and she and Defendant Jacks tried to bear all of Perry's weight, but Perry just mumbled and occasionally screamed.

51.     That Perry was wheeled to a squad car, at which time Defendant Kroes observed that Perry was weak.

### PERRY'S RETURN TO THE POLICE ADMINISTRATION BUILDING

52.     Prior to Perry's return from Sinai, Defendants assigned to the Police Administration Building were made aware that Perry was on a medical run and would be returning.

53.     That when Defendants Kroes and Jacks arrived at the Police Administration Building they were greeted by Defendants Santiago and Bungert, and which time Defendants Kroes and Jacks informed Defendant Santiago that Perry was not being cooperative.

16

54. That after ten to fifteen minutes of waiting in the garage of the Police Administration Building Defendants Kroes and Jacks decided that they were going to take Perry up to the Prisoner Processing Section because they did not have Perry's paperwork.

55. That when Perry was taken out of the squad car he could not walk.

56. That Perry was carried from the squad car to elevator, Defendant Santiago was holding Perry's legs up by the shackles and Defendants Kroes, Jacks, and Bungert held Perry up by his arms.

57. That as Perry was carried from the squad car to the elevator it was observed by the Defendants Kroes, Jacks, Santiago, and Bungert that Perry had urinated and defecated on himself.

58. At 6:50 p.m. Perry was dragged by officers/defendants into the elevator and placed on the floor – officers were required to hold up Perry's head and support him with their knees to assure that he did not fall backward. When the elevator stopped all four officers/defendants present were needed to carry Perry out of the elevator. Perry was offered no medical assistance at this point, despite his serious-acute-obvious medical emergency.

59. That Defendants Kroes, Jacks, Santiago, and Bungert dragged Perry out of the elevator and deposited him on the floor in the hallway of the Prisoner Processing Section where Perry remained for the next fifteen minutes, groaning and shouting in pain, waning in and out of consciousness. Several officers/defendants held him on the ground and placed a spit mask over his face, despite Perry's serious-obvious-acute medical emergency. Perry was offered no assistance, medical or otherwise, while he lay dying right in front of the defendants' eyes.

60. That while Perry lay on the floor in serious-acute-obvious medical distress Defendant Bungert placed him in a compression hold.

61. That while being held on the floor Perry urinated on himself.

17

62. That officers inexplicably continued to hold Perry on the ground with a spit mask in place despite his serious-acute-obvious physical distress and screams of pain, "Perry was conscious and breathing but was somewhat incoherent in his actions." Perry received no medical assistance at this point.

63. Defendant Diaz-Berg was playing solitaire on her computer while she was supposed to be searching for Perry's paperwork during the time period he was dying in MPD's custody.

64. That Defendant Robbins observed this entire scene, but took no action to assist Perry or provide him any medical care. Investigators recorded, "Robbins stated he went out to the booking area hallway and observed the officers with Perry and that Perry was on the floor by the bench moaning, having a spit mask over his face. Robbins continued to relate that Perry was conscience and breathing but somewhat incoherent in his actions. Robbins stated he observed that Perry had defecated and urinated on himself as his clothing was soiled and an odor was emitting from him."

65. Defendant Robbins attempted to get Perry's paperwork completed as soon as possible and upon its completion called for a unit to convey Perry to the County Jail, but at no time did Robbins provide any care for Perry's serious-obvious-acute medical emergency.

66. That the paperwork required to transport Perry to the County Jail was allegedly not in order; therefore, defendants decided to place an obviously distressed, incoherent and dying Perry in a holding cell. An unconscious Perry was carried to a cell in a hog-tied position when one of the officers holding Perry dropped him; thereby, causing Perry's head to hit the floor from at least two feet up – leaving copious amounts of blood on the floor. Perry, near death, was still not offered any medical assistance at this point.

67. That inmate Tyrone Evans observed that once the Defendants: Diaz-Berg; Ayala; Kroes; Jacks; Lee; Santiago; and Bungert got to the cell door with Perry, the defendant on Perry's

18

right side dropped Perry causing him to fall to floor and hit his face on the floor from approximately two feet above the ground.

68. That Inmate Henry L. Martin observed, "[Perry] who had the seizure earlier being held by his feet of the ground by an officer and another officer holding one of [Perry's] arms." "Martin stated that [Perry's] head was on the floor of the cell as if he was dropped by the other officer because no one was holding onto to [Perry's] other arm."

69. Defendants Diaz-Berg, Ayala, Kroes, Jacks, Lee, Santiago, and Bungert picked Perry up off the floor and carried him into a cell and then deposited him on the floor.

70. That Perry was carried to his cell in the Prisoner Processing Section in a 'hog-tied position."

71. That after the Defendants, Diaz-Berg, Ayala, Kroes, Jacks, Lee, Santiago, and Bungert left Perry on the floor in his cell inmate Tyrone Evans observed blood in front of the cell where Perry was dropped and heard Perry moaning.

72. That after Perry was placed in the holding cell he did not speak any audible words "just a bunch of mumbling."

73. Defendants, Diaz-Berg, Ayala, Kroes, Jacks, Lee, Santiago, and Bungert left Perry in the cell with the spit mask still over his face.

74. As Perry lay in his cell he was moaning and banging on the wall, despite this he was offered, no assistance, medial of otherwise, for his serious-acute-obvious medical emergency.

75. That as Perry remained dying in the cell for over an hour, moaning and groaning in pain, heard by other inmates, he was not provided any assistance, medical or otherwise, despite his serious-acute-obvious medical emergency.

76. Defendant Diaz-Berg reported she observed Perry every fifteen minutes in this condition, she observed "Perry was just making grunting noises and rolled around a bit." Yet,

19

Defendant Diaz-Berg provided Perry no assistance, medical or otherwise, despite Perry's serious-acute-obvious medical emergency.

77. That approximately 8:20 P.M. Defendants Ayala, Diaz-Berg, Lee, Lopez, Salinsky, Robbins, and Ivy came to remove Perry from his cell, but not one of the aforementioned defendants offered Perry assistance, medical or otherwise, despite his serious-acute-obvious medical emergency.

78. That Perry was placed on the floor and cuffed prior to being removed from his cell, Defendant Lopez stated that Perry was not resisting in any manner. Officer Salinsky reported that he never saw Perry be combative.

79. That Perry was carried out of the holding cell by his arms and legs, "facedown with his arms behind his back, legs bent at the knees and feet in the air."

80. Defendant Salinsky observed that Perry could not walk, and had defecated himself. Defendant Salinsky offered no assistance, medical or otherwise to Perry, despite his serious-acute-obvious medical emergency.

81. As Perry was carried to the elevator he would, "go limp from time to time."

82. Defendant Lopez reported that that Perry was walking with wobbly legs as if he were intoxicated, and that Lopez could smell a strong odor of fecal matter emitting from Perry.

83. That officers tightly gripped Perry for fear that he would fall again as an obviously acutely distressed Perry was moved to the elevator at 8:23 p.m., handcuffed and required officer assistance to maintain his weight.

84. After Perry was removed from the holding cell at the Prisoner Processing Section of the Police Administration Building, Defendant Diaz-Berg observed blood in his cell and outside of his cell door – Defendant Diaz Berg also noted the smell of feces in Perry's cell.

85. After Perry was removed from the cell, Andrew J. Puechner, Custodian 2, entered the cell and observed gobs of spit, blood and fecal matter on the floor.

20

### PERRRY IS TRANSPORTED FROM THE POLICE ADMINISTRATION BUILDING TO THE COUNTY JAIL WHERE HE IS TREATED WITH DELIBERATE INDIFFERNCE UNTIL HE PASSES AWAY ON THE FLOOR

86.     That Defendants Lopez and Salinsky exited the Police Administration Building, with Perry in the rear of the conveyance van at 8:34 P.M. on September 13, 2010.

87.     That Defendants Lopez and Salinsky arrived at the Criminal Justice Facility ("County Jail"), with Perry at 8:35 P.M. on September 13, 2010.

88.     Perry was transported via police wagon. When he was removed by defendants from the wagon, fresh blood and feces were left behind. Perry was offered no assistance, medical or otherwise, at this point.

89.     When Defendants Lopez and Salinsky arrived at the County Jail Defendant Salinsky entered the pre-booking area to advise the Sherriff's Department staff of "the situation" with Perry.

87.     Defendants Lopez and Salinsky removed Perry from the conveyance van, Perry needed assistance to stay upright, and according to Defendant Lopez "appeared to be heavier, and needed more assistance to walk."

90.     That over six minutes passed after Defendants Lopez and Salinsky arrived at the County Jail, along with Perry. After six minutes Perry was carried into the pre-booking area of the County Jail and deposited on the floor

91.     Defendant Lopez reported that as he and Defendant Salinsky dragged Perry into the pre-booking area of the County Jail, Perry was unable to walk or stand; therefore Defendants Lopez and Salinsky placed him on the floor. No assistance, medical or otherwise was provided to Perry for his serious-acute-obvious medical emergency.

92.     That MPD Officers Frank Salinsky and Richard Lopez escorted Perry into Pre-Booking Area of the County Jail in leg restraints, handcuffed behind his back and wearing a spit mask. "Blood was seeping from the spit mask." "[Defendant Hale] went out and observed Perry

21

laying on the floor on his back rolling back and forth groaning. Defendant Hale stated that she could see **Perry bleeding through the spit mask."** Perry was offered no assistance, medical or otherwise, at this point.

93. That at 8:41 p.m. Perry was carried into the Pre-Booking Area of the County Jail by several officers from the MPD and the MCSD, where he was deposited on the floor. An obviously distressed Perry remained on the floor schackled with a mask over his face and continued to roll back and forth, groaning in pain. That after two minutes Perry was moved by several officers /defendants to a concrete bench at which time his soiled pants were around his ankles. A dying Perry continued to rock back and forth and groan in pain – but Perry was offered no assistance, medical or otherwise, at this time, despite his serious-acute-obvious medical emergency.

94. That when Perry was placed on the floor in the Pre-Booking Area of the County Jail at 8:41 p.m. over ten officers, nurses, and staff, including, but not limited to, Defendants: Lopez; Salinsky; Bell; Hale; and Kickbush, simply watched Perry rock back and forth and mumble, groan, and scream in pain, but offered no assistance, medical or otherwise, despite Perry's serious-obvious-acute medical emergency.

95. That Defendant Hale went out to the Pre-Booking Area of the County Jail and observed "Perry laying on the floor on his back rolling back and forth groaning." Defendant Hale could see Perry bleeding through the spit mask. Defendant Hale provided no assistance, nor ordered anyone to provide assistance, medical or otherwise, to Perry despite Perry's serious-acute-obvious medical emergency.

96. At 8:44 P.M., Perry was picked up by four officers/defendants, including Defendants Salinsky and Lopez. Perry's pants were around his ankles, his undergarments were soiled, and he was doubling over and squealing in pain. In spite of Perry serious-acute-obvious medical emergency seven individuals/defendants, including, but not limited to Defendants Salinksy, Lopez, Bell, and

22

Kickbush stood by and offered no assistance to Perry, medical or otherwise, despite Perry's serious-obvious-acute medical emergency.

97. At 8:45 p.m., ten minutes after Perry arrived at the County Jail, and over four minutes after he was carried in and deposited onto the floor of the Pre-Booking Area, shackled and wearing a spit mask saturated with blood, R.N. Virgo attempted to assess Perry. "[Defendant R.N. Virgo] asked [Perry] if his name was James Perry, [Perry] nodded yes. During this time [Defendant R.N. Virgo] asked [Perry] to say his name, and [Perry] did not verbalize Based on Nuero assessment, [Perry's] inability to verbalize name, seeing blood to spit mask of unknown origin, soiled underpants (had BM) and recent history of seizure, [Defendant R.N. Virgo] refused [Perry]." (2) Perry was offered no assistance, medical or otherwise, at this time.

98. On the prescreening Report Defendant R.N. Virgo recorded, "[Perry] bleeding profusely from mouth, unsure of source as has spit mask on. [Perry] also seems to be having loose bowels."

99. That Defendants Salinsky, Bell, and Lopez told Defendant R.N. Virgo that Perry had come from Sinai Hospital.

100. That Defendant R.N. Virgo attempted to communicate with Perry for thirty seconds and then simply walked away, offering Perry no assistance, medical or otherwise, despite Perry's serious-acute-obvious medical emergency.

101. That as Defendant R.N. Virgo walked away Defendants including, but not limited to: Salinsky; Lopez; Bell; and Kickbush walked away from Perry, offering no assistance to Perry, medical or otherwise, despite Perry's serious-acute-obvious medical emergency.

102. For nearly two minutes after Perry was refused by Defendant R.N. Virgo he remained on a concrete bench held in place by two Sherriff's Department officers/defendants as he rocked back and forth in pain – dying, groaning, wearing a spit mask saturated with blood and vomit

23

while covered in his own urine and feces. Officers then let go of their grip and allowed Perry to crash onto to the floor where he continued to rock back and forth and groan in pain. Perry was offered no assistance, medical or otherwise, at this point.

103. That the defendants walked away and left Perry lying on the concrete floor for nearly four minutes with no supervision by staff and/or medical attention. Perry was shackled, wearing a spit mask saturated with blood and vomit, his pants were around his ankles and his undergarments were soiled with his feces and his urine. During this time period Perry rocked and back and forth moaning and groaning in pain until Perry stopped moving or making any noise at all - either dead or close to it. Perry was offered no medical assistance at this point.

104. That during this four minute period Defendants: including but not limited to, Lopez, Salinsky; Bell, and Kickbush stood on the other end of the Pre-Booking Area and provided Perry no assistance, medical or otherwise, despite Perry serious-acute-obvious medical emergency.

105. That at 8:48 P.M. thirteen minutes after Perry arrived at the County Jail, seven minutes after he was deposited on the floor of the Pre-Booking area, and three minutes after he was "prescreened" by Defendant R.N. Virgo the Milwaukee Fire Department was informed that there was an emergency situation and that "[Perry] bleeding from head."

106. At 8:50 p.m. the Milwaukee Fire Department - EMS was "dispatched as Bleeding: Uncontrolled/Can't be stopped."

107. Jared Kimber of the Milwaukee Fire Department Responding Unit E-2 recorded the chief complaint was, "[Perry not breathing] onset of event occurred five minutes prior to calling EMS.

108. At approximately 8:51 p.m. Defendants Lopez, Salinsky, and Bell lifted Perry's lifeless, non-breathing body off the ground and placed him in a seating position.

24

109. At Approximately 8:52 p.m., over seventeen minutes after Perry arrived at the County Jail, over eleven minutes after Perry was brought into the Pre-Booking Area of the County Jail, over six minutes after Perry was first encountered by nursing staff, and four minutes after Perry was left unassisted on the floor by himself, Defendant RN Wenzel ask Defendant Bell to remove the spit mask, which was done.

110. After the spit mask was taken off Defendant R.N. Wenzel observed: Perry's head go back and Perry's eyes roll back; Perry's pupils were dilated; Perry did not have a pulse; frothy blood was coming from Perry's nose and mouth; and that Perry was not breathing.

111. At 8:53 p.m. Perry's lifeless body was laid flat on the floor and Perry was finally offered some minimal medical attention at this point; unfortunately far too late. Perry was pronounced dead a short time later.

112. That Milwaukee Fire Department – EMS Responding Unit E-2 made initial contact with Perry at 8:54 P.M.

113. Jared Kimber of the Milwaukee Fire Department Responding Unit E-2 recorded that cardiac arrest had occurred prior to Milwaukee Fire Department Responding Unit E-2's arrival and was "Witnessed by Healthcare Provider."

114. That at 8:54, over eight minutes after Defendant R.N. Virgo first assessed Perry, and over six minutes after Perry was left unassisted by himself Milwaukee County Jail Staff the Milwaukee County Fire Department Rescue Unit was informed that Perry was unresponsive.

## AFTER PERRY'S DEATH

115. Detective Paul J. Formolo ("Formolo") observed the scene of Perry's death and noted, "There were also ankle restraints secured to each ankle. I observed that [Perry's] boxer shorts had light red blood stains around the groin area, and that there was fecal matter inside the boxers underneath [Perry's] buttock and upper thigh areas. The cut white t-shirt also had numerous

25

light red blood stains. . . . A blue and black face mask was lying on the floor about 5 feet, southwest form the victim's head. I observed light red blood stains on the portion of the mask that covers the mount and nose."

116. Formolo observed blood in the transport area of the transport van used to transport Perry from the Prisoner Processing Section to the Milwaukee County Jail.

117 Identification Technician Scott Kempinski recovered blood from: the driver's side bench; and on the compartment's floor of the transport van used to transport Perry from the Prisoner Procession Section to the Milwaukee County Jail.

118. Milwaukee County Jail Nurses, Defendants R.N. Virgo and R.N. Wenzel, later told Milwaukee Fire Department Medical responder, Jarod Kimber, that they knew Perry was in trouble when he arrived, he could not walk or stand, when the spit mask was removed Perry was bleeding from his nose and left ear. Despite this knowledge, Defendants R.N. Virgo and R.N. Wenzel failed to offer Perry any assistance, medial or otherwise, for over ten minutes after his arrival at the jail, and waited over seven minutes to call for an ambulance, despite Perry's serious-acute-obvious medical condition.

119. That Milwaukee County, and the MCSD including the personnel identified above violated James Franklin Perry's rights as protected by the United States Constitution, 42 U.S.C. § 1983, the Wisconsin Constitution, and Wisconsin Statutory law by being deliberately indifferent to the health and welfare of James Franklin Perry and/or being deliberately indifferent to whether James Franklin Perry lived or died and/or by working in concert to conceal the circumstances of Perry's death.

120. That the City of Milwaukee, the MPD, and the Milwaukee County Sherriff's Department, including the personnel identified above violated James Franklin Perry's rights as protected by the United States Constitution, 42 U.S.C. § 1983, the Wisconsin Constitution, and

26

Wisconsin Statutory law by being deliberately indifferent to the health and welfare of James Franklin Perry and/or being deliberately indifferent to whether James Franklin Perry lived or died and/or by working in concert to conceal the circumstances of Perry's death.

121.   That the City of Milwaukee, Milwaukee County, the Milwaukee Police Department, and the Milwaukee County Sherriff's Department, and the individuals identified above, failed to properly supervise and train its staff, employees or agents.

## VI.   VIOLATIONS OF LAW

### COUNT ONE - CRUEL AND UNUSUAL PUNISHMENT IN VIOLATION OF THE EIGTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION

122.   Realleges and incorporates herein by reference the allegations of the preceding paragraphs.

123.   That defendants' deliberate indifference to and complete failure to address Perry's serious-acute-obvious medical emergency was a substantial cause of Perry's avoidable pain, suffering, embarrassment and subsequent death.

124.   That defendants' policies, practices, acts, and/or omissions evidence and constitute deliberate indifference to the serious health care needs of all inmates in their custody, including Perry, and violate the cruel and unusual punishment clause of the Eight Amendment, made applicable to the States through the Fourteenth Amendment to the Unites States Constitution.

125.   That defendants' policies, practices, procedures, acts, and/or omissions placed Perry at an unreasonable, continuing and foreseeable risk of substantial pain and suffering and death.

126.   That as a proximate result of defendants' unconstitutional policies, practices, procedures, acts and/or omissions, Perry unnecessarily suffered physical, psychological, and emotional injury, and eventually lost his life.

### COUNT TWO - CRUEL AND UNUSUAL PUNISHMENT IN VIOLATION OF SECTION SIX OF THE STATE OF WISCONSIN CONSTITUTION

27

127. Realleges and incorporates herein by reference the allegations of the preceding paragraphs.

128. That defendants' policies, practices, procedures, acts, and/or omissions evidence and constitute deliberate indifference to the serious health care needs of all inmates in their custody, including Perry, and violate the cruel and unusual punishment clause of Section Six of the State of Wisconsin Constitution.

129. That defendants' policies, practices, procedures, acts, and/or omissions placed Perry at an unreasonable, continuing and foreseeable risk of substantial pain and suffering and death.

130. That as a proximate result of defendants' unconstitutional policies, practices, procedures, acts and/or omissions, Perry unnecessarily suffered physical, psychological, and emotional injury, and eventually lost his life.

## COUNT THREE - MONELL LIABILITY

### A. Failure to Train and Adequately Supervise

131. Realleges and incorporates herein by reference the allegations of the preceding paragraphs.

132. That the defendants failed to adequately train officers, correctional employees, and medical employees at all times relevant to this complaint, on how to deal with inmates suffering from serious-acute-obvious medical conditions and individuals in custody in need of immediate medical care, how to perform life-saving procedures, how to recognize serious medical emergencies, how to react to serious medical emergencies, and how to conduct wellness checks on individuals in custody, amongst other failures.

133. That the failure of the defendants to adequately train and supervise its correctional employees concerning several key issues such as on how to deal with inmates suffering from serious-acute-obvious medical emergencies and individuals in custody in need of immediate medical care,

28

how to perform life-saving procedures, how to recognize serious medical emergencies, how to react to serious medical emergencies, and how to conduct wellness checks on individuals in custody, demonstrated a deliberate indifference on the part of these defendants as whether the failure to adequately train and supervise it correctional employees would result in the violation of the Constitutional, Civil, and Statutory Rights, of individuals entrusted to their care, such as Perry.

134. That the above mentioned failure to adequately train and supervise correctional employees was a direct and proximate cause of the violations of the Constitutional, Civil, and Statutory Rights of Perry.

135. That the above mentioned failure to adequately train and supervise correctional employees, and the acts and omissions of these defendants, was a direct and proximate cause of injuries, damages, and eventual death suffered by Perry.

### B. Policies and Customs of Placing Allowing Inmates to suffer and ordering them taken to the Hospital, but providing no medical care to these inmates if they are suffering from a serious medical condition.

136. Realleges and incorporates herein by reference the allegations of the preceding paragraphs.

137. That the actions of the defendants, correctional employees, law enforcement employees, and medical staff including ignoring individuals in custody with serious-acute-obvious medical emergencies and simply calling for an ambulance or relying on the fact that the individual had earlier visited a hospital, but taking no action to assist the individual, medically or otherwise were done in accordance with the defendants' de facto policy regulation, decision or custom condoning the use of these procedures to deal with inmates suffering from serious-acute-medical emergencies. That these de facto policies were officially adopted, expressly, or implicitly, and promulgated or practiced by the defendants even though such custom may not have received written formal approval by the defendants, and even though such de facto policies were inconsistent with or violated written policies.

29

138. That this official or de facto policy and/or custom of ignoring individuals in custody with serious-acute-obvious medical emergencies and simply calling for an ambulance or relying on the fact that the individual had earlier visited a hospital, but taking no action to assist the individual, medically or otherwise, violated Perry's Constitutional, Civil, and Statutory Rights and permitted, encouraged, tolerated or ratified the actions of the defendants, MPD Staff, and MCSD staff, all in a malicious or reckless disregard or with deliberate indifference regarding the Constitutional, Civil, and Statutory Rights of Perry.

139. That the above mentioned official or de facto policy and/or custom of ignoring individuals in custody with serious-acute-obvious medical emergencies and simply calling for an ambulance or relying on the fact that the individual had earlier visited a hospital, but taking no action to assist the individual, medically or otherwise violated Perry's Constitutional, Civil, or Statutory Rights, which arose or were allowed to continue as a result of, among other things, the following acts and omissions of the defendants: failing to adequately train, supervise and control its employees; failing to provide adequate training on how to deal with serious-acute-obvious medical emergencies; failing to fill the position of medical director and/or medical coordinator; allowing a correctional attitude – which allowed MPD staff and MCSD staff to avoid dealing with serious-acute-obvious medical emergencies, and allowed untrained correctional officers to simply ignore, serious-acute-obvious medical emergencies.

140. That the widespread practice of, ignoring individuals in custody with serious-acute obvious medical emergencies and simply calling for an ambulance or relying on the fact that the individual had earlier visited a hospital, but taking no action to assist the individual, medically or otherwise amongst other things, and/or violating individuals Constitutional, Civil or Statutory rights constitutes a custom or usage that, although not officially authorized, reflects practices which were so well settled that they virtually constituted official policy.

30

141. That the defendants had actual and/or constructive knowledge of each and every one of the above-mentioned policies and customs and were deliberately indifferent as to whether said policies and customs would change.

142. That each and every one of the above mentioned polices and customs was a direct and proximate cause of the violations of Perry's Constitutional, Civil and Statutory Rights, which eventually led to his death.

143. That the above mentioned policies and customs, as well as the acts and omissions of the defendants were a direct and proximate cause of the injuries, damages, and eventual death of Perry.

## COUNT FOUR - NEGLIGENCE

144. Realleges and incorporates herein by reference the allegations of the preceding paragraphs.

145. That the defendants, were negligent at all times material hereto in that they, among other things, failed to provide Perry assistance, medical or otherwise, despite his serious-acute-obvious medical emergency, failed to appropriately train MPD and MCSD employees to deal with individuals with acute-serious-obvious medical emergencies and were otherwise negligent.

146. That the negligence of the defendants was a direct and proximate cause of the injuries, damages, and eventual death of Perry.

## COUNT FIVE - WRONGFUL DEATH WIS. STAT. §§895.03

147. Realleges and incorporates herein by reference the allegations of the preceding paragraphs.

148. That Perry's death was caused by defendants' wrongful acts, negligence and/or improper conduct.

31

149. That if Perry's death had not ensued he would have been able to bring a claim against the above named defendants for violations of Title 42 of the United States Code, Sections 1983 and 1985 for violations of his rights under the Eighth and Fourteenth Amendment to the U.S. Constitution and his rights under Article I, Sections Six of the Wisconsin Constitution; and Wisconsin Common Law.

## VII.  DAMAGES

150. Realleges and incorporates herein by reference the allegations of the preceding paragraphs.

151. That as a direct result of the unlawful acts of the defendants, Perry unnecessarily suffered loss of future enjoyment of life, loss of companionship with his family, and death; therefore his estate is entitled to monetary damages in an amount to be determined just by the Court.

152. That as a direct result of the unlawful acts of the defendants, James Franklin Perry Jr. (a minor) lost the support and society and companionship of his father; therefore, he is entitled to monetary damages in an amount to be determined just by the Court.

## VIII.  CONDITIONS PRECEDENT

153. Realleges and incorporates herein by reference the allegations of the preceding paragraphs.

154. All conditions precedent to this lawsuit have been performed or have otherwise occurred.

## IX.  PRAYER FOR RELIEF

155. WHEREFORE, the plaintiffs demand judgment awarding compensatory damages in an amount determined by the Jury, awarding punitive damages in an amount determined by the Jury, awarding the reasonable costs and expenses of this action including a reasonable attorney's fee and their out-of-pocket expenses and granting the plaintiffs such other and further relief as may be just.

32

156. That Milwaukee County and the City of Milwaukee are liable pursuant to Wis. Stat. §895.46 for payment of any judgment entered against the defendants in this action because said defendants were acting within the scope of their employment when they committed the above-mentioned actions.

## X. DEMAND FOR JURY TRIAL

157. The plaintiffs demand trial by jury.

Dated at Pewaukee, Wisconsin this 8th day of June, 2012.

GENDE LAW OFFICE, S.C.
Attorneys for Plaintiffs

By:

James J. Gende II
SBN 1030921
Christopher P. Katers
SBN 1067557

**MAILING ADDRESS:**
N28W23000 Roundy Dr. Ste 200
Pewaukee, WI 53072
Telephone: (262) 970-8500
Facsimile: (262) 970-7100

Case 2:12-cv-00664-JPS   Filed 06/28/12   Page 33 of 33   Document 1-2