## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

THE ESTATE OF JAMES FRANKLIN PERRY,
by NATHANIEL CADE, JR., Special Administrator,
and JAMES FRANKLIN PERRY JR. (A Minor)
      Plaintiffs,
    v.

Case No. 12-CV-664

CHERYL WENZEL, R.N., et al,
      Defendants.

## SUPPLEMENTAL JOINT FINAL PRETRIAL REPORT

Plaintiffs, the Estate of James Franklin Perry by Nathaniel Cade Jr., Special Administrator, and James Franklin Perry Jr. ("Plaintiffs"), defendants Richard Lopez, Frank Salinsky, Margarita Diaz Berg, Alexander C. Ayala, Froilan Santiago, Karl Robbins, Crystal Jacks, Corey Kroes, Rick Bungert, Luke Lee, Jacob Ivy ("Defendants"), pursuant to this Court's Order dated October 1, 2018 (Dkt. No. 313) and Civil L.R. 16(c)(1), submit the following Supplemental Joint Pretrial Report.[1] Defendants Nicole Virgo and Cheryl Wenzel have not participated in the preparation of this report, as those claims and defenses are resolved. A Stipulation and Order is Forthcoming.

### I.    SUMMARY OF THE FACTS, CLAIMS, AND DEFENSES.

On September 13, 2010, James Franklin Perry ("Perry") was taken into custody by members of the City of Milwaukee Police Department (the "MPD"). MPD officers held Mr. Perry at the Police Administration Building ("PPS"), where he suffered a seizure and was taken to Aurora Sinai Medical Center for medical treatment. Mr. Perry was released and returned to PPS. After approximately two hours, MPD officers transported Mr. Perry to the Milwaukee County Jail ("the Jail"). Mr. Perry was brought into the Jail through the pre-booking room, became unresponsive and died.

---

[1] The Declaration of James J. Gende II in support of Plaintiffs' Pretrial Motions and Motions *in Limine* is attached hereto as **Ex. A.** The Affidavit of Susan E. Lappen in support of Defendants' Motions *in limine* is attached hereto as **Ex. B.** An index of all exhibits to this Pretrial Report is attached as **Ex. DD.**

Mr. Perry's Estate (the "Estate") and his minor son, James Franklin Perry, Jr. bring claims against 11 MPD officers (the "Defendants") pursuant to 42 U.S.C. §1983. The Estate asserts that the Defendants failed to provide Mr. Perry medical care and/or access to medical care in violation of his constitutional rights. The Defendants deny liability and assert that their conduct was objectively reasonable under the circumstances.[234]

---

[2] The City Defendants assert that while the District Court and the Seventh Circuit previously held that the Fourth Amendment applies to the Estate's denial of medical care claim because Perry had not yet received a judicial probable cause determination and was an arrestee at the time of his death, the majority of circuits hold that the deliberate indifference standard of the Fourteenth Amendment applies to such claims, *see, e.g., Miranda-Rivera v. Toledo-Davila*, 813 F.3d 64, 67-69, 74 (1st Cir. 2016); *Brown v. Middleton*, 362 F. App'x 340, 342-44 (4th Cir. 2010); *Burnette v. Taylor*, 533 F.3d 1325, 1327-31 (11th Cir. 2008); *Barrie v. Grand Cty.*, 119 F.3d 862, 863-64, 867-69 (10th Cir. 1997); *Weyant v. Okst*, 101 F.3d 845, 848-50, 856-57 (2d Cir. 1996); *Nerren v. Livingston Police Dept.*, 86 F.3d 469, 472-73 (5th Cir. 1996); *Groman v. Township of Manalapan*, 47 F.3d 628, 632-33, 636-37 (3d Cir. 1995); *Dorman v. District of Columbia*, 888 F.2d 159, 160-61 (D.C. Cir. 1989). The Supreme Court has yet to rule on this issue   Because all but two circuits apply the 14th Amendment standard to these cases, the City Defendants respectfully maintain that it should be applied here. The Brief of Defendants in Support of Applying the Fourteenth Amendment "Deliberate Indifference" Standard to the "Failure-to-Provide-Medical-Care-Claims," Rather than the Fourth Amendment "Objective Reasonableness" Standard, During the Upcoming Trial in this Matter is attached hereto as **Ex. C.**

[3] The Plaintiffs assert that both the District Court and the Seventh Circuit Court of Appeals have determined that the objectively unreasonable standard of the Fourth Amendment applies to the claims at issue and that is the law of the case. The "most elementary application" of the doctrine of law of the case is that "when a court of appeals has reversed a final judgment and remanded the case, the district court is required to comply with the express of implied rulings of the appellate court." *Creek v. Village of Westhaven*, 144 F.3d 441, 445 (7th Cir. 1998), quoting *Waid v. Merrill Area Public Schools*, 130 F.3d 1268, 1272 (7th Cir. 1997), citing in turn *Williams v. Commissioner*, 1 F.3d 1268, 1272 (7th Cir. 1997) (other citations omitted). Plaintiff's Brief in Opposition to Defendants' Argument that the Fourth Amendment does not apply to this matter is attached hereto as **Ex. D**
[4] Waiver - The City Defendants did not challenge the District Court's application of the Fourth Amendment on appeal to the Seventh Circuit. The City Defendants did not challenge the Seventh Circuit's application of the Fourth Amendment on appeal to the U.S. Supreme Court. As such those arguments are deemed waived. "We consistently have held that a party's failure to address a claim in its opening brief results in a waiver of that issue. *See Sere v. Board of Trustees of the Univ. of Ill.*, 852 F.2d 285, 287 (7th Cir. 1988) ("It is not the obligation of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel. . . . We consistently and evenhandedly have applied the waiver doctrine when appellants have failed to raise an issue in their opening brief." (internal quotations and citations omitted). Moreover, in situations in which there is one or more alternative holdings on an issue, we have stated that failure to address one of the holdings results in a waiver of any claim of error with respect to the court's decision on that issue. *See Williams v. Leach*, 938 F.2d 769, 772 (7th Cir. 1991) (holding that Williams' failure to raise on appeal the alternative ground for dismissal of claim based on statute of limitations resulted in waiver of issue on appeal); *Landstrom v. Illinois Dep't of Children & Family Servs.*, 892 F.2d 670, 678 (7th Cir. 1990) (stating that because the plaintiffs failed to challenge expressly the district court's alternative holding with respect to Count II of the complaint, they had "waived any claim of error in that ruling")." *Kauthar SDN BHD v. Sternberg*, 149 F.3d 659, 668 (7th Cir. 1998). Plaintiffs' Brief in Opposition to the City Defendants' Argument that the Fourth Amendment Does Not Apply to this Matter is attached hereto as **Exhibit D.**

## II. STATEMENT OF THE ISSUES

1.  Did the Defendants each, individually, violate Perry's constitutional rights by failing to provide access to medical care?[5]

2.  If the answer to Question 1 is yes, what amount of compensatory damages, if any, is the Estate entitled to recover against the Defendants who failed to provide Perry medical care?

3.  If the answer to Question 1 is yes, is the Estate entitled to an award of punitive damages against the Defendants who failed to provide Perry medical care?

4.  If the answer to Question 3 is yes, what amount of punitive damages is the Estate entitled to recover?

5.  If the answer to question 1 is yes, what amount is James Perry Franklin Jr. entitled to for the loss of society and companionship of his father?[6]

## III. WITNESSES

Subject to the Court's ruling on motions *in limine*, Plaintiffs may call the following witnesses at trial (additionally please see attached **Ex.E**):

1.  Anglia Garner is the mother of James Franklin Perry, and the Grandmother and legal guardian James Franklin Perry Jr. Ms. Garner will testify regarding the loss of society and companionship between her son James Franklin Perry, and her grandson James Franklin Perry Jr.

2.  James Franklin Perry, Jr. is the minor son of James Franklin Perry. James Franklin Perry, Jr. will testify regarding the loss of society and companionship between his father, James Franklin Perry and himself.

---

[5] The Defendants assert that a separation causation issue exists which should be reflected on the verdict form.
[6] The parties dispute whether James Franklin Perry Jr. (a minor) has a claim for loss of society and companionship pursuant to § 1983.

3.     Nicole Virgo is a registered nurse and at the time of the incident relevant hereto was employed as a registered nurse by the Milwaukee County Sherriff's Office at the Jail. Virgo made the decision not to admit Perry to the Jail on September 13, 2010 as a result of his acute medical condition. Nicole Virgo will testify regarding the circumstances surrounding Perry's death.

4.     Corey Kroes, at all relevant times hereto was employed as an officer by the City of Milwaukee Police Department. Kroes accompanied Perry to the hospital on September 13, 2010 and was present and assisted in restraining Perry when Perry was returned to PPS and placed in a cell despite his acute medical condition in contravention of hospital discharge instructions. Kroes told Perry if "he was talking he was breathing," in response to Perry's complaints of not being able to breathe. Kroes will testify regarding the circumstances surrounding Perry's death and his conduct on September 13, 2010.

5.     Froilan Santiago, at all times relevant hereto, was employed as an officer by the City of Milwaukee Police Department. Santiago was present and assisted in restraining Perry when Perry was returned to PPS and placed in a cell despite his acute medical condition in contravention of hospital discharge instructions.     Santiago will testify regarding the circumstances surrounding Perry's death and his conduct on September 13, 2010.

6.     Jacob Ivy, at all times relevant hereto, was employed as a police aide by the City of Milwaukee Police Department. Ivy was present and assisted in restraining Perry when Perry was returned to PPS and placed in a cell despite his acute medical condition in contravention of hospital discharge instructions. Ivy will testify regarding the circumstances surrounding Perry's death and his conduct on September 13, 2010.

7.     Luke Lee, at all times material hereto, was employed as a police officer by the City of Milwaukee Police Department. Lee was present and assisted in restraining Perry when Perry was returned to PPS and placed in a cell despite his deteriorating medical condition in

contravention of hospital discharge instructions. Lee will testify regarding the circumstances surrounding Perry's death and his conduct on September 13, 2010.

8.   Alexander Ayala, at all times material hereto, was employed as a police officer by the City of Milwaukee Police Department. Ayala was present and assisted in restraining Perry when Perry was returned to PPS and placed in a cell despite his deteriorating medical condition in contravention of hospital discharge instructions. Ayala will testify regarding the circumstances surrounding Perry's death and his conduct on September 13, 2010.

9.   Frank Salinsky, at all times material hereto, was employed as a police officer by the City of Milwaukee Police Department. Salinsky removed Perry from his cell at PPS and transported Perry to the Jail where he was deposited on the floor despite his deteriorating medical condition in contravention of hospital discharge instructions. Salinsky will testify regarding the circumstances surrounding Perry's death and his conduct on September 13, 2010.

10.  Karl Robbins, at all times material hereto, was employed as a Lieutenant by the City of Milwaukee Police Department. Robbins was the ranking officer at PPS when Perry was returned to PPS and placed in a cell despite his deteriorating medical condition in contravention of hospital discharge instructions. Robbins told Perry that if he was acting like an animal he would be treated like an animal.      Karl Robbins will testify regarding the circumstances surrounding Perry's death and his conduct on September 13, 2010.

11.   Rick Bungert, at all times material hereto, was employed as a police officer by the City of Milwaukee Police Department. Rick Bungert was present and assisted in restraining Perry when Perry was returned to PPS and placed in a cell despite his deteriorating medical condition in contravention of hospital discharge instructions. Bungert placed Perry in a compression hold despite Perry's pleas for help including, "I can't breathe." Bungert will testify regarding the circumstances surrounding Perry's death and his conduct on September 13, 2010.

12.     Margarita Diaz-Berg, at all times material hereto, was employed as a police officer by the City of Milwaukee Police Department. Diaz-Berg was responsible for monitoring Perry during his time at PPS, but ignored Perry's deteriorating medical condition in contravention of hospital discharge instructions. Diaz-Berg, will testify regarding the circumstances surrounding Perry's death and her conduct on September 13, 2010.

13.     Crystal Jacks, at all relevant times hereto, was employed as an officer by the City of Milwaukee Police Department. Jacks accompanied Perry to the hospital on September 13, 2010 and also was present and assisted in restraining Perry when Perry was returned to PPS and was placed in a cell despite his acute medical condition in contravention of hospital discharge instructions. Jacks will testify regarding the circumstances surrounding Perry's death and her conduct on September 13, 2010.

14.     Richard Lopez, at all times material hereto, was employed as a police officer by the City of Milwaukee Police Department. Lopez removed Perry from his cell at PPS and transported Perry to the Jail where he was deposited on the floor despite his deteriorating medical condition in contravention of hospital discharge instructions. Lopez will testify regarding the circumstances surrounding Perry's death and his conduct on September 13, 2010.

15.     Andrew Puechner, Milwaukee Police Department Custodial Worker, at all times relevant hereto, was a custodial worker employed by the City of Milwaukee Police Department. Puechner observed Perry while Perry was held at PPS and was summoned to clean the gobs of blood and spit Perry left behind when removed from cell A3 at PPS. Puechner will testify regarding the circumstances surrounding Perry's death on September 13, 2010.

16.     Jarod Kimber, Milwaukee Fire Department. Currently Village of Greendale Fire Department. Kimber, at all times material hereto, was employed by the City of Milwaukee Fire Department. Kimber was dispatched to deal with the medical emergency call eventually called by members

of the Milwaukee County Sherriff's Office on Perry's arrival at the Jail. Kimber will testify regarding the circumstances regarding Perry's death on September 13, 2010.

17. Fatrena Hale, Milwaukee County Sherriff's Department Sergeant. Hale, at all times material hereto, was a Sergeant employed by the Milwaukee County Sheriff's Office. Hale was the ranking officer in the sally port at the Jail when Perry was dragged in and deposited on the floor. Hale will testify regarding the circumstances of Perry's death on September 13, 2010.

18. Edward Flynn, Formerly Chief of the Milwaukee Police Department, to be contacted through counsel for the Defendants. Flynn, at all times material hereto, was employed as the Chief of Police of the Milwaukee Police Department. Flynn reviewed the circumstances and investigation reports surrounding Perry's death and made public statements, including opinions regarding fault, regarding the same. Flynn will testify regarding his investigation and review of the circumstances surrounding Perry's death as well as the training officers receive in regard to medical emergencies and the expectations regarding officer reactions thereto.

19. Marlon Davis, Milwaukee Police Department, to be contacted through counsel for the Defendants. Davis, at all times material hereto, was employed as a Detective by the City of Milwaukee Police Department. Davis conducted an investigation of the circumstances surrounding Perry's death and issued reports in regard thereto. Davis will testify regarding his observations and investigation of Perry's death while in the custody of the City of Milwaukee Police Department.

20. Dale Bormann, Jr., Milwaukee Police Department, to be contacted through counsel for the Defendants. Bormann, Jr., at all times material hereto, was employed as a Detective by the City of Milwaukee Police Department. Bormann, Jr., conducted an investigation of the circumstances surrounding Perry's death and issued reports in regard thereto. Bormann, Jr.,

will testify regarding his observations and investigation of the death of Perry while in the custody of the City of Milwaukee Police Department.

21. Warren Allen, Milwaukee Police Department, to be contacted through counsel for the Defendants. Allen, at all times material hereto, was employed as a Detective by the City of Milwaukee Police Department. Allen conducted an investigation of the circumstances surrounding Perry's death and issued reports in regard thereto. Allen will testify regarding his observations and investigation of the death of Perry while in the custody of the City of Milwaukee Police Department.

22. Harold Thomas, Milwaukee Police Department, to be contracted through counsel for the Defendants. Thomas, at all times material hereto, was employed as a Detective by the City of Milwaukee Police Department. Thomas conducted an investigation of the circumstances surrounding Perry's death and issued reports in regard thereto. Thomas will testify regarding his observations and investigation of the death of Perry while in the custody of the City of Milwaukee Police Department.

23. Tyrone Evans, 2025 W. Center St. Milwaukee, 414.755.2456. Evans was in the custody of the Milwaukee Police Department, at PPS, on September 13, 2010 and observed Defendants drop Perry directly onto his head when he was being dragged into Cell A3, despite his inability to walk, along with his other acute medical symptoms. Evans will testify regarding his observations regarding the circumstances surrounding Perry's time at PPS on September 13, 2010.

24. Michele R. Harrison, to be contracted through counsel for the Defendants. Michele R. Harrison was a Detective employed by the City of Milwaukee Police Department and retired on April 17, 2018. Harrison authorized the destruction of evidence in this matter, namely paperwork, a white blanket, a CD containing photographs, a BLUE SPIT MASK, and

miscellaneous forms, despite the fact that the property inventory sheet, "clearly stated, in typed capital letters, that the items were to be kept on 'HOLD – PER CIVIL LITIGATION – P.O. COLKER (01-08-13).'" Harrison will testify to the circumstances regarding the destruction of evidence in this matter.

Plaintiffs reserve the right to call any of the witnesses listed by the Defendants and to amend this list based on the evidence presented by the Defendants.

Subject to the Court's ruling on motions *in limine,* the Defendants may call the following witnesses at trial (Please see attached **Exhibit D**):

1. Warren Allen. Warren Allen was a Milwaukee police detective, and is currently an MPD lieutenant, who might be called to testify as a rebuttal witness regarding the statements he took from witnesses, and other work he conducted relative to the MPD investigation surrounding the death of Mr. Perry.

**Plaintiffs Response:** Plaintiffs object to any potential testimony Warren Allen may make regarding witness statements as such testimony falls under inadmissible hearsay. *See* Fed. R. Evid. 801-803.

2. Alexander Ayala. Alexander Ayala was a Milwaukee police officer, and is currently an MPD detective, who is one of the defendants in this case. He assisted with processing Mr. Perry while he was at the PPS, and with escorting Mr. Perry from the booking area to his cell, and from his cell to the conveyance vehicle for transport to the CJF. Det. Ayala will testify regarding his general training and experience, as it related to his work as a jailer assigned the PPS in September, 2010, and specifically regarding the jail processing of Mr. Perry on September 13, 2010. Det. Ayala will also testify regarding his First Aid training, and the totality of circumstances available to him regarding his actions and decision-making relative to Mr. Perry. Det. Ayala will otherwise testify consistent with his deposition testimony.

3. Stephon Bell. Stephon Bell was/is an MPD police officer. On September 13, 2010 he was

assigned for the first part of his shift as an assistant jailer at the PPS, and for the later part of his shift, he was assigned as the MPD liaison officer assigned to the CJF. Det. Ayala will testify regarding his general training regarding PPS procedures and procedures regarding the processing of prisoners, along with procedures regarding acting as a liaison officer with CJF. PO Bell will testify regarding his First Aid training, his observations of Mr. Perry, along with the totality of his circumstances regarding his related actions and decision-making. PO Bell will otherwise testify consistent with his deposition testimony.

4.    Dale Borman, Jr. was/is a Milwaukee police detective, who might be called to testify as a rebuttal witness regarding the statements he took from witnesses, and other work he conducted relative to the MPD investigation surrounding the death of Mr. Perry.

**Plaintiffs Response:** Plaintiffs object to any potential testimony Dale Bormann, Jr. may make regarding witness statements as such testimony falls under inadmissible hearsay. *See* Fed. R. Evid. 801-803.

5.    Rick Bungert was/is a Milwaukee police officer, and one of the defendants in this case. Officer Bungert assisted with bringing Mr. Perry up to the PPS from the garage at the Police Administration Building, and with placing him in a jail cell. Officer Bungert will testify regarding his general training and experience, as it related to rendering First Aid, and transporting and processing prisoners in September, 2010, and specifically regarding the jail processing of Mr. Perry. PO Bungert will also testify regarding the totality of circumstances available to him regarding his actions and decision-making regarding Mr. Perry. PO Bungert will otherwise testify consistent with his deposition testimony.

6.    Paul Coogan, M.D. Dr. Coogan was the doctor who admitted Mr. Perry into the hospital, and began his course of treatment. Dr. Coogan will testify regarding the basis for that treatment, including his decision to medicate Mr. Perry with anti-seizure medications. He will also testify

regarding the anticipated effects of that medication. Dr. Coogan will also testify regarding Mr. Perry's behaviors while at the hospital, including the fact that he had at least two more seizures while at the hospital. Dr. Coogan will otherwise testify consistent with his deposition testimony and information contained within Mr. Perry's hospital records.

**Plaintiffs Response:** Plaintiffs object that the proposed testimony offered is not relevant to whether the City Defendants denied and/or failed to provide medical care to Perry. Further, Dr. Coogan has not been designated as an expert in this matter. Any testimony of Dr. Coogan should also be limited based on the Court's ruling on *Motion in Limine #5* – to exclude non-expert opinion testimony concerning the medical effects of medication on Perry, Dr. Coogan's observations and/or treatment plan.

7. Marlon Davis. Marlon Davis was a Milwaukee police detective, who is currently an MPD lieutenant. Lt. Davis might be called to testify as a rebuttal witness regarding the statements he took from witnesses, and other work he conducted relative to the MPD investigation surrounding the death of Mr. Perry.

**Plaintiffs Response:** Plaintiffs object to any potential testimony Marlon Davis may make regarding witness statements as such testimony falls under inadmissible hearsay. *See* Fed. R. Evid. 801-803.

8. Margarita Diaz-Berg was/is an MPD police officer assigned as one of the jailers at the PPS on the day of Mr. Perry's arrest. She is a defendant in this case. Like Det. Ayala, PO Diaz-Berg will testify regarding her general training regarding rendering First Aid, PPS procedures, and processing prisoners. PO Diaz-Berg will testify regarding her observations of Mr. Perry, along with the totality of her circumstances regarding her related actions and decision-making. PO Diaz-Berg will otherwise testify consistent with her deposition testimony.

9. Todd Fischer (Retired Detective): Retired Det. Fischer was one of the detectives who investigated the crime for which Mr. Perry was arrested on September 13, 2010. He retired

from the MPD in August, 2018. Det. Fischer took a statement from Mr. Perry mid-morning on September 13, 2010, and will testify that Mr. Perry made no complaints regarding his health or well-being, and that he did not request medication or medical treatment. Det. Fischer will also testify that his shift ended while Mr. Perry was being treated for his seizure activity at the hospital, and that he was later contacted by PPS staff regarding the completion of Mr. Perry's arrest-related paperwork, relative to his transfer to the CJF. Det. Fischer will otherwise testify consistent with his reports.

**Plaintiffs' Response:** Plaintiffs object to the introduction of any testimony or evidence regarding the details surrounding Mr. Perry's arrest, which is not relevant to the question of the City Defendants' constitutional violations at issue. See Plaintiffs' Motion *in limine* No. 2. Further, the fact that Mr. Perry did not complain about his health and/or well-being to Detective Fischer prior to his in-custody seizure is not relevant. Police knowledge of his emergent medical condition only becomes an issue once Mr. Perry began seizing and was taken to the emergency room, but not prior to that instance.

10.  **Marquita Franklin**. Ms. Franklin was the victim of Mr. Perry's criminal activity on the night of his arrest. She will testify consistent with her description of same, as presented during her deposition in this case.

**Plaintiffs' Response:** Plaintiffs object to Marquita Franklin's testimony as it has absolutely no relevance. This is a blatant attempt by the City Defendants to sway the jury with passion and/or prejudice. Allowing such testimony substantially outweighs any possible probative value, of which there is none. See Plaintiffs Motion *in limine* No. 2.

11.  Jacob Ivy. Jacob Ivy was a police aide, who is now an MPD police officer, and is one of the defendants in this case. He will be called to testify regarding his general training and experience, as it related to his work as a police aide assigned the PPS in September, 2010, and specifically regarding rendering First Aid, and the processing of prisoners at the PPS. He will

testify regarding his observations of Mr. Perry on September 13, 2010. PO Ivy will also testify regarding the totality of circumstances available to him regarding his actions and decision-making regarding Mr. Perry. PO Ivy will otherwise testify consistent with his deposition testimony.

12.     Crystal Jacks. Crystal Jacks is a defendant in this case, who was one of the officers who transported Mr. Perry to the hospital, and back again to the PPS. She also helped move Mr. Perry from the booking area into his cell. Officer Jacks will testify regarding her general training and experience, as it related to rendering First Aid, and transporting and processing prisoners in September, 2010, and specifically regarding the jail processing of Mr. Perry. PO Jacks will also testify regarding the totality of circumstances available to her regarding her actions and decision-making regarding Mr. Perry. PO Jacks will otherwise testify consistent with the subject matter of her deposition testimony.

13.     Renee Jahnke, M.D. Dr. Jahnke was one of the doctors who treated Mr. Perry at the hospital, and continued his course of treatment after Dr. Coogan's shift ended. Dr. Jahnke will testify regarding the basis for that treatment, including her decision to medicate Mr. Perry with anti-seizure medications, and the potential effects of that medication. Dr. Jahnke will also testify regarding Mr. Perry's behaviors while at the hospital, including the fact that she observed that he had to be assisted to walk to the restroom. Dr. Jahnke will testify consistent with her deposition testimony and information contained in the hospital records.

**Plaintiffs' Response:** Plaintiffs objects that testimony offered is relevant to whether the Defendants denied and/or failed to provide medical care to Perry. Further, Dr. Jahnke has not been designated as an expert in this matter. Any testimony of Dr. Jahnke should also be limited based on the Court's ruling on *Motion in Limine #5* – to exclude non-expert opinion testimony concerning the medical effects of medication on Perry.

14.     Shannon Jones. Shannon Jones was a Milwaukee police detective, who retired in 2013, who might be called to testify as a rebuttal witness regarding the statements he took from witnesses, and other work he conducted relative to the MPD investigation surrounding the death of Mr. Perry.

**Plaintiffs Response:** Plaintiffs object to any potential testimony Shannon Jones may make regarding witness statements as such testimony falls under inadmissible hearsay. *See* Fed. R. Evid. 801-803.

15.     Kelly Kieckbusch. Ms. Kieckbusch, now deceased, was a deputy sheriff assigned to the CJF on the night of Mr. Perry's arrest. Excerpts of her discovery deposition testimony will be read into the record.

16.     Jarod Kimber. Mr. Kimber was one of the EMTs who treated Mr. Perry on the night of his arrest. He will testify consistent with his deposition testimony, as well as the notes/records prepared by MFD staff regarding Mr. Perry's treatment that night.

17.     Corey Kroes. Corey Kroes is a defendant, and was one of the officers who transported Mr. Perry to the hospital and back again to the PPS. He also helped move Mr. Perry from the booking area into a cell. He resigned from the MPD in 2017, to return to school. Former Officer Kroes will testify regarding his general training and experience, as it related to rendering First Aid, and transporting and processing prisoners in September, 2010, and specifically regarding the jail processing of Mr. Perry. PO Kroes will also testify regarding the totality of circumstances available to him regarding his actions and decision-making regarding Mr. Perry. PO Kroes will otherwise testify consistent with his deposition testimony.

18.     Luke Lee. Luke Lee was/is a Milwaukee police officer, and is one of the defendants in this case. Officer Lee simply helped carry Mr. Perry from the booking area and into his cell, and then later helped escort Mr. Perry to a conveyance vehicle, for transport to the CJF. PO Lee will testify regarding his general training and experience, as it related to his work at the PPS in

September, 2010, and specifically regarding rendering First Aid and the jail processing of Mr. Perry. PO Lee will also testify regarding the totality of circumstances available to him regarding his actions and decision-making relative to Mr. Perry. PO Lee will otherwise testify consistent with his deposition testimony.

19. Richard Lopez. Richard Lopez was/is a Milwaukee police officer, and is one of the defendants in this case. Officer Lopez assisted with transporting Mr. Perry from the PPS to the CJF. He will testify regarding his general training and experience, as it related to rendering First Aid, and transporting and processing prisoners in September, 2010, and specifically regarding the jail processing of Mr. Perry. PO Lopez will also testify regarding the totality of circumstances available to him regarding his actions and decision-making relative to Mr. Perry. PO Lopez will otherwise testify consistent with his deposition testimony.

20. Rebecca Potterton, RN. Rebecca Potterton was one of the nurses who treated Mr. Perry at the hospital, and cared for him during his course of treatment. Ms. Potterton will testify regarding Mr. Perry's behaviors while at the hospital, including the fact that he had to be assisted to walk to the restroom. Nurse Potterton will testify consistent with her deposition testimony and her notations found in the hospital records regarding Mr. Perry's treatment.

**Plaintiffs Response:** Plaintiffs objects that testimony offered is relevant to whether the Defendants denied and/or failed to provide medical care to Perry and the corresponding constitutional violations at issue. Any testimony of Potterton should also be limited based on the Court's ruling on *Motion in Limine #5* – to exclude non-expert opinion testimony concerning the medical effects of medication on Perry and/or any expert opinions not previously disclosed.

21. Christopher Poulos, MD. Dr. Poulos was the medical examiner who conducted Mr. Perry's autopsy, and determined Mr. Perry's cause of death. Dr. Poulos will testify consistent with the information presented in his autopsy protocol and related reports, along with this deposition

testimony in this case.

**Plaintiffs Response:** Plaintiffs objects that testimony offered is relevant to whether the Defendants denied and/or failed to provide medical care to Perry and the corresponding constitutional violations at issue. Any testimony of Dr. Poulos should also be limited based on the Court's ruling on *Motion in Limine #5* – to exclude non-expert opinion testimony concerning the medical effects of medication on Perry and/or any expert opinions not previously disclosed.

22.   Andrew Puechner. Mr. Puechner was employed by the MPD as a custodial worker at the PPS in September, 2010. He has since retired. Mr. Puechner will testify that Mr. Perry was talking with him while Mr. Perry was in his jail cell, and that Mr. Perry asked Mr. Puechner about the time. Mr. Puechner will testify that Mr. Perry was not wearing his expectorant shield while he was in the cell, and that he saw Mr. Perry several times during the time that he was in his cell, but did not observe anything which suggested that Mr. Perry was in need of medical treatment. Mr. Puechner will otherwise testify consistent with the subject matter of his deposition.

23.   Karl Robbins. Karl Robbins, now retired, was employed as a lieutenant of police, and assigned as the supervisor at the PPS on the day of Mr. Perry's arrest. Lt. Robbins will testify regarding his general training relative to rendering First Aid, PPS procedures, and processing prisoners. Lt. Robbins will testify regarding his observations of Mr. Perry, along with the totality of his circumstances regarding his related actions and decision-making. Lt. Robbins will otherwise testify consistent with his deposition testimony.

24.   Frank Salinsky. Frank Salinsky was/is a Milwaukee police officer, and is one of the defendants in this case. Officer Salinsky assisted with bringing Mr. Perry from the PPS to the CJF. He will be called to testify regarding his general training and experience, as it related to rendering First Aid and transporting and processing prisoners in September, 2010, and specifically regarding the jail processing of Mr. Perry. PO Salinsky will also testify regarding the totality of

16

circumstances available to him relative to his actions and decision-making regarding Mr. Perry. PO Salinsky will otherwise testify consistent with his deposition testimony.

25. Froilan Santiago. Froilan Santiago was/is a Milwaukee police officer, and is one of the defendants in this case. He has since been promoted to the rank of "detective." Det. Santiago assisted with bringing Mr. Perry up to the PPS from the garage at the Police Administration Building, and then moving Mr. Perry into his jail cell. He will testify regarding his general training and experience, as it related to rendering First Aid, transporting and processing prisoners in September, 2010, and specifically regarding the jail processing of Mr. Perry. Det. Santiago will also testify regarding the totality of circumstances available to him regarding his actions and decision-making relative to Mr. Perry. Det. Santiago will otherwise testify consistent with his deposition testimony.

26. Ms. Virgo was one of the CJF nurses who responded to Mr. Perry on the night of his arrest. She will testify consistent with her deposition testimony regarding her related actions and decision making. She will testify that up until the point when Mr. Perry appeared to lose consciousness, he was not in need of emergency medical treatment.

**Plaintiffs Response:** Nicole Virgo has not been designated as an expert in this matter. Any testimony of Virgo should be limited based on the Court's ruling on *Motion in Limine #5* – to exclude non-expert opinion testimony concerning the medical effects of medication on Perry.

27. Cheryl Wenzel. Ms. Wenzel was one of the CJF nurses who responded to Mr. Perry on the night of his arrest. She will testify consistent with her deposition testimony regarding her related actions and decision making. She will testify that up until the point when Mr. Perry appeared to lose consciousness, he was not in need of emergency medical treatment.

**Plaintiffs Response:** Cheryl has not been designated as an expert in this matter. Any testimony of Wenzel should be limited based on the Court's ruling on *Motion in Limine #5* – to exclude non-expert opinion testimony concerning the medical effects of medication on Perry.

The City Defendants reserve the right to call any of the witnesses listed by the Plaintiffs and to amend their witness lists based on the evidence presented by the other parties.

### IV.     Expert Witnesses.

The Plaintiffs will call Dr. Rachel L. Waldron, MD as an expert witness at trial. Dr. Waldron is a physician at Danbury Hospital Emergency Department in Danbury CT where she supervises residents for multiple disciplines. From 1999 until 2014 Dr. Waldron was the Medical Director New York Hospital Queens EMS where supervised 90 EMT'S employed by the hospital. Dr. Waldron received her undergraduate degree for Columbia College, her medical degree from State University of New York at Stony Brook and undertook her residency at the University of Illinois at Chicago. Dr. Waldron is board certified in: Emergency Medicine; Advanced Cardiac Life Support; Advanced Pediatric Life Support; Advanced Trauma Life Support; and REMAC Online Medical Control. Dr. Waldron has authored several articles including, "Accuracy of Paramedic Diagnosis in Patients Presenting with Difficulty Breathing." Prehospital Emergency Care, Vol 10, No. 1 January/March 2006. Dr. Waldron is a member of the Society of Academic Emergency Medicine and the American College of Emergency Physicians. Dr. Waldron will testify consistent with the expert report/opinions she rendered in this case, along with the subject matter discussed during her deposition in this case.

The Plaintiffs will call Robert Prevot as an expert witness at trial. Prevot has thirty-three years of law enforcement experience including fifteen years as a supervisor, four years as a manager. Prevot serves as a criminal justice instructor for the University of Phoenix where he teaches criminology, communications, criminal procedures, court procedures, and introduction to policing. Prevot was employed by the San Mateo County Sheriff's Office where he spent two years supervising

and conducting background and internal affairs investigations. During his 16 years with the Redwood City Police Department Prevot was a Field Training Officer for five years when he developed and implemented training program under staff direction. Prevot has Certificates from California Peace Officer Standards and Training Certifications including Basic, Intermediate, Advanced, Supervisory, and Management Certificates of Completion. Prevot will testify consistent with the expert report/opinions he rendered in this case, along with the subject matter discussed during his deposition in this case.

The Plaintiffs will call Michelle Sandry as an expert witness at trial. Sandry is currently, and had been since 2012, an Educational Consultant with the Wisconsin Department of Justice, Training and Standards Bureau. Sandry's duties include writing and maintaining curriculum for the Jail and Secure Juvenile Detention recruit academies. Sandry also assists county jails with their training needs. From 2008 until 2102, Sandry was an instructor certification specialist with the Wisconsin Department of Justice, Training and Standards Bureau, where she worked with those who teach in Law Enforcement, Jail, and Secure Detention Facilities. Sandry spent over ten years with the Platteville Police Department where she acted as a road officer, officer in charge, community policing coordinator and patrol sergeant. Sandry holds a Bachelor of Arts degree from the University of Wisconsin, Platteville and a Master's degree in Organizational Management from the University of Phoenix. Sandry will testify consistent with the expert report/opinions she rendered in this case, along with the subject matter discussed during her deposition in this case.

The City Defendants will be calling as an expert and fact witness Dr. Christopher Poulos, formerly an Assistant Medical Examiner with the Office of the Milwaukee County Medical Examiner, and currently the Chief Medical Examiner for Marion County, Indiana (Indianapolis). Dr. Poulos will testify via videoconference call. Dr. Poulos conducted the autopsy of Mr. Perry, and he will testify regarding his work and findings, as reported in his autopsy protocol and related

documents. Dr. Poulos will also testify consistent with the subject matter discussed during the course of his 9/19/13 deposition in this case.

The City Defendants may also call Lt. James MacGillis as an expert witness. Lt. MacGillis has been a member of the Milwaukee Police Department since 1995. He has provided training to both recruit and tenured officers, and is a state-certified instructor in Firearms, Professional Communication, Defensive and Arrest Tactics, and other topics. He has co-authored training materials published by the Wisconsin Department of Justice, for use in training law enforcement officers throughout the State of Wisconsin, and he authored training materials used to teach PPS personnel about their responsibilities in processing PPS prisoners. Lt. MacGillis will testify consistent with the expert report/opinions he rendered in this case, along with the subject matter discussed during his July 20, 2015 deposition in this case.

The City Defendants may call Chad Zawitz, M.D., Dr. Zawitz may testify consistent with his expert witness report rendered for this case, and he may testify that a patient who is sitting upright, not appearing to be in respiratory distress, and is moving their extremities would not trigger an emergency medical response. Also, he may testify that the fact that a prisoner has soiled clothing or is wearing a spit mask would not trigger an emergency medical response. Dr. Zawitz may testify that Mr. Perry did not appear to be in an emergent state until he lost consciousness while Nurse Wenzel was wiping his face. Dr. Zawitz will also point out the inaccuracies found in Dr. Waldron's report and opinions, as set forth in pages 15-19 of Dr. Zawitz' report. Dr. Zawitz will also testify that the use of shackles and protective gear – like a spit mask – are commonly used, humane, and in no way contributed to Mr. Perry's death.

**Plaintiffs Response:** Plaintiffs objects that testimony offered is not relevant to whether the City Defendants denied and/or failed to provide medical care to Perry and the corresponding

constitutional violations at issue. Plaintiffs object to any potential testimony of Dr. Zawitz not disclosed in the submitted report.

The Defendants may call Jaffrey A. Breall, M.D., Dr. Breall will testify consistent with his March 30, 2015 opinion letter. He will testify that he agrees with the medical examiner that Mr. Perry died of an acute myocardial infarction (heart attack). The heart attack likely occurred within 12 hours of Mr. Perry's death. Dr. Breall will also testify that while at the CJF pre-booking facility, Mr. Perry did not exhibit behavior which indicated that he was suffering from an acute heart attack, until he became unresponsive. Dr. Breall will testify that survival after an out-of-hospital cardiac arrest, even in the present era, is quite poor, and that studies show that in a hospital setting, survival is less than 10%. He will conclude that it is highly unlikely that any other treatments would have changed Mr. Perry's outcome.

**Plaintiffs Response:** Plaintiffs objects that the testimony offered is not relevant to whether the City Defendants denied and/or failed to provide medical care to Perry and the corresponding constitutional violations at issue. Plaintiffs object to any potential testimony of Dr. Breall not disclosed in the submitted report.

Finally, the Defendants may also call Dr. Paul Coogan, Dr. Renee Jahnke, and Nurse Rebecca Potterton as witnesses. They provided treatment and care to Mr. Perry on the night in question at Sinai Samaritan Medical Center, and so they are witnesses to significant facts in this case, but due to their credentials and medical expertise, they are also experts. All three will testify consistent with the information contained in Mr. Perry's medical records from that night, as well as the subject matter addressed during their discovery depositions in this case.

Plaintiffs object to the proposed role of Dr. Paul Coogan, Dr. Renee Jahnke, and Nurse Rebecca providing any expert testimony in this trial of this matter as they were never identified as expert witnesses until the due date of the pretrial report.

## V.    Exhibits

The following is a list of the exhibits (numbered according to Gen. L.R. 26.1) that Plaintiff may offer at trial: Please See **Exhibit E.**

1.    Milwaukee County Health Transfer Summary dated 9/13/10.

2.    Milwaukee County Major Incident Report dated 9/13/10.

3.    Milwaukee County – Progress Notes Summary.

4.    Milwaukee Criminal Justice Facility Jail log dated 9/13/18.

5.    Time line for Perry, James Franklin.

6.    Incident Report Milwaukee Police Department Supplement 0015.

7.    Aurora Sinai Medical Center Certified Medical Records dated 9/13/10.

8.    City of Milwaukee Medical Receiving Screening Form dated 9/13/10.

9.    Incident Report Milwaukee Police Department Supplement 003.

10.    Milwaukee Police Department Standard Operating Procedure – Prisoners dated 5/19/10.

11.    Incident Report Milwaukee Police Department ORIG page 2 of 7.

12.    Milwaukee Police Department Educational Materials – Student Version.

13.    Incident Report Milwaukee Police Department Supplement 0022.

14.    Incident Report Milwaukee Police Department Supplement No 002 dated 9/13/10.

15.    Milwaukee Police Department: Positional Asphyxia.

16.    Detailed History for Police Call.

17.    Incident Report Milwaukee Police Department.

18.    Incident Milwaukee Police Department Supplement 0012.

19.    Incident Report Milwaukee Police Department Supplement 0012.

20.    Milwaukee Police Department Standard Operating Procedure – Prisoners – Investigative Holds.

21. Incident Report Milwaukee Police Dept. Supplement No 0004.

22. Incident Report Milwaukee Police Department Supplement No. 0005.

23. Incident Report Milwaukee Police Department Supplement no. 0012.

24. Daily Cell Block Check.

25. Milwaukee Police Department Paradigm Shift: Struggling and resistance can indicate an immediate Medical Emergency and not a criminal act.

26. Major Incident Report dated 9/13/10.

27. Milwaukee County Jail Log.

28. Transcript of Chief Ed Flynn U Tube Video 10/30/12.

29. Milwaukee Police Department Memorandum dated November 21, 2012.

30. News Article "Chief Ed Flynn on Derek Williams' Death" dated 10/24/12.

31. Incident Report Milwaukee Police Department dated 9/13/10 Supplement 0025.

32. Second Supplement Responses of City of Milwaukee Defendants to Plaintiffs' Request Nos. 2 and 4 for Production of Documents and Interrogatory Responses dated April 3, 2014.

33. Milwaukee Police Department Standard Operating Procedure 090 Prisoners effective May 19, 2010.

34. Incident Report Milwaukee Police Department Supplement 0030 dated 10/12/12.

35. Incident Report Milwaukee Police Department Supplement 0008 dated 9/14/10.

36. Milwaukee Police Department Memorandum dated 11/21/12.

37. Aurora Sinai Medical Center Medical Records 9/13/10.

38. Reports from Det. Davis Folder.

39. Incident Report Milwaukee Police Department Supp. 23.

40. Incident Report Milwaukee Police Department Supp. 003.

41. Incident Report Milwaukee Police Department Supp. 0024.

42. Incident Report Milwaukee Police Department Supp. 0025.

43. Milwaukee Fire Department Ambulance Record.

44. Milwaukee Fire Department In Matter OF: 2/2/11.

45. Incident Report Milwaukee Police Department Supplement No 0015.

46. Sandry Notes.

47. Draft Version of Sandry Report.

48. Email correspondence Susan Lappen to Sandry 2/5/15.

49. Milwaukee Police Department Expectorant Shield Training.

50. Email from Michelle Sandry to Susan Lappen 4/16/15.

51. Pictures of the Scene after the Passing of Perry.

52. Expert Report of Robert Prevot dated November 25, 2014.

53. Expert Report of Rachel Waldron dated November 24, 2014.

54. Medical Records from WLCFS Christian Family Counseling.

55. Medical Examiners Investigative Report.

56. Medical Examiners Hand Notes.

57. Medical Examiners' Hand Notes.

58. Milwaukee County Bates No 0463.

59. Demographic Report.

60. Milwaukee County Policy Legal Duty of Care.

61. Video Recordings from Milwaukee County Jail.

62. Video Compiled from Videos provided by Defendants.

63. Video of PPS Adult Booking 1 Elevator Camera.

64. Video of PPS Elevator Cam.

65. Video Adult Booking Hallway Cam.

66. Video Booking Room 513 Cam.

67. Video Booking Room 515 Cam.

68. Video PPS Elevator Cam.

69. Video Booking Room 516 Cam.

70. Video Booking Room 519 Cam.

71. Amendment to SOP 090 Prisoners.

72. Responses of the City of Milwaukee Defendants to Plaintiffs' First Requests for Defendants to Produce Documents dated 01/17/2013.

73. Supplemental Response of the City of Milwaukee Defendants to Plaintiffs' Request Nos. 1, 2, & 16 for Production of Documents dated 02/12/2014.

74. Responses to Plaintiffs' First Set of Interrogatories to Alexander C. Ayala dated 03/06/2014.

75. Responses to Plaintiffs' First Set of Interrogatories to Jacob Ivy dated 03/07/2014.

76. Responses to Plaintiffs' First Set of Interrogatories to Luke Lee dated 03/07/2014.

77. Responses to Plaintiffs' First Set of Interrogatories to Rick Bungert dated 03/07/2014.

78. Responses to Plaintiffs' First Set of Interrogatories to Karl Robbins dated 03/07/2014.

79. Responses to Plaintiffs' First Set of Interrogatories to Froilan Santiago dated 03/07/2014.

80. Responses to Plaintiffs' First Set of Interrogatories to Margarita Diaz-Berg dated 03/07/2014.

81. Responses to Plaintiffs' First Set of Interrogatories to Corey Kroes dated 03/10/2014.

82. Responses to Plaintiffs' First Set of Interrogatories to Crystal Jacks dated 03/10/2014.

83. Responses to Plaintiffs' First Set of Interrogatories to Frank Salinsky dated 03/10/2014.

84. Responses to Plaintiffs' First Set of Interrogatories to Richard Lopez dated 03/11/2014.

85. Third Supplemental Responses of the City of Milwaukee Defendants to Plaintiffs' Request No. 4 for Production of Documents dated 04/08/2014.

86.  Responses to Plaintiffs' Second Request for Admissions to all City Defendants dated 08/12/2014.

87.  Responses to Plaintiffs Third Request for Admissions to all City Defendants dated 04/24/2015.

88.  Responses to Plaintiffs' First Request for Admissions and Interrogatories to Rich Bungert dated 07/15/2014.

89.  Responses to Plaintiffs' First Request for Admissions and Interrogatories to Karl Robbins dated 07/15/2014.

90.  Responses to Plaintiffs' First Request for Admissions and Interrogatories to Margarita Diaz-Berg dated 07/15/2014.

91.  Responses to Plaintiffs' First Request for Admissions and Interrogatories to Frank Salinsky dated 07/15/2014.

92.  Responses to Plaintiffs' First Request for Admissions and Interrogatories to Corey Kroes dated 07/15/2014.

93.  Responses to Plaintiffs' First Request for Admissions and Interrogatories to Richard Lopez dated 07/15/2014.

94.  Responses to Plaintiffs' First Request for Admissions and Interrogatories to Crystal Jacks dated 07/15/2014.

95.  Responses to Plaintiffs' First Request for Admissions and Interrogatories to Luke Lee dated 07/15/2014.

96.  Responses to Plaintiffs' First Request for Admissions and Interrogatories to Froilan Santiago dated 07/15/2014.

97.  Responses to Plaintiffs' First Request for Admissions and Interrogatories to Alexander Ayala dated 07/15/2014.

98. Photograph of the Spit mask (DCF No. 90-4)

The Plaintiffs reserve the right to offer any of the exhibits listed by the Defendants and to amend this list based on evidence presented by the Defendants.

The following is list of exhibits (numbered according to Gen. L.R. 26.1) that the Defendants may offer at trial:

Please See Attached **Exhibit E.**

| City Trial Ex. No. | Description |
|---|---|
| 1001 | Perry Certified Medical Records from Aurora Sinai Medical Center (9/13/2010) |
| 1002 | Medical Records Screening Form |
| 1003 | MPD Incident Report 102560219 - Supplement No. 3 |
| 1004 | SOP - 090-Prisoners -- Effective May 19, 2010 |
| 1005 | MPD Incident Report 102560219 - ORIGINAL; Page 2 of 7 |
| 1006 | MPD Educational Materials - Student Version - Officer Responsibilities (pp. 26-27) |
| 1007 | MPD Incident Report 102560219 - Supplement No. 22 |
| 1008 | MPD Incident Report 102560219 - Supplement No. 2 |
| 1009 | MPD Educational Materials - Student Version - Positional Asphyxia (p. 46) |
| 1010 | CAD # 102561995 from 9/13/2010 |
| 1011 | MPD Incident Report 102560219 - Original (pp. 6-7) |
| 1012 | MPD Incident Report 102560219 - Supplement No. 12; MPD00193-196 |
| 1013 | MPD Incident Report 102560219 - Supplement No. 12; MPD00083-86 |
| 1014 | MPD PPD PI-44 - Conclusion of Internal Investigation (PPD-2010-0532) |
| 1015 | SOP - 090-Prisoners -- Roll Call version RE: Investigative Holds -- Effective 3/23/2011 |
| 1016 | MPD Incident Report 102560219 - Supplement No. 4 |
| 1017 | MPD Incident Report 102560219 - Supplement No. 5 |
| 1018 | Daily Cell Block Check |
| 1019 | Paradigm Shift Worksheet |
| 1020 | Transcript of MPD Youtube Video recorded 10.30.12 with Aurora Patient Education |
| 1021 | IAD Memo from Sgt. Raclaw to Lt. Sgrignuoli RE: Lt. Karl Robbins (11/21/2012) |
| 1022 | Expressmilwaukee.com articles (2) |

| | |
|---|---|
| 1023 | MPD Incident Report 102560219 - Supplement No. 25 |
| 1024 | Letter with Second Supplemental Responses to Plaintiffs' Request Nos. 2 & 4 and Amended Responses to Plaintiffs' 1st Set of Interrogatories (4/3/2014) |
| 1025 | SOP - 090 - Prisoners -- Effective 5/19/2010 (pp. 1-3 of 31) |
| 1026 | MPD Incident Report 102560219 - Supplement No. 30 (10/12/2012) |
| 1027 | MPD Incident Report 102560219 - Supplement No. 8 |
| 1028 | MPD PPD PI-44 - Conclusion of Internal Investigation (PPD-2010-0532) |
| 1029 | MPD Incident Report 102560020 - Original |
| 1030 | MPD Incident Report 102560020 - Supplement No. 5 |
| 1031 | MPD Incident Report 102560020 - Supplement No. 8 |
| 1032 | MPD Incident Report 102560219 - Supplement No. 13 |
| 1033 | MPD Incident Report 102560219 - Supplement No. 18 |
| 1034 | MPD Incident Report 102560219 - Supplement No. 19 |
| 1035 | MPD Incident Report 102560219 - Supplement No. 21 |
| 1036 | Guardianship Paperwork for minor child -- 3/8/2010 |
| 1037 | Uniform Child Custody Affidavit -- 3/8/2010 |
| 1038 | Birth Certificate of Minor Child (James F. Perry I; DOB: 12/22/2001) |
| 1039 | Determination and Order on Petition for Guardianship of Minor -- 4/30/2010 |
| 1040 | Verification Letter for Kinship Care payments (4/22/2014) |
| 1041 | Divorce Documents of Anglia Garner -- November 1995 |
| 1042 | SSA-1099 for 2013 Payments received by Anglia Garner for James F Perry |
| 1043 | Cover Letter from Messmer Catholic Schools (encl. Application) |
| 1044 | Decedent's Social Security Card and State ID |
| 1045 | Decedent's Birth Certificate -- James Franklin Perry Jr. DOB: 4/18/1969 |
| 1046 | MPD Incident Report 102560219 -- Original & Supplement Nos. 1, 2, 4-13, 15, 17-19, 21-23, 26-31 |
| 1047 | MPD Incident Report 102560219 - Supplement Nos. 23, 10, 11, 4, 9, 5 |
| 1048 | MPD Incident Report 102560219 - Supplement No. 24 |
| 1049 | MFD Ambulance Records |
| 1050 | MFD Memo from Kimber to Lt. Behling re: 9/13/2010 run (dated 11/2/2011) |
| 1051 | Handwritten Notes "Admit & Release" |
| 1052 | Draft Version of Sandry Report |
| 1053 | Lappen e-mail to Sandry dated 2/25/2015 |
| 1054 | MPD Expectorant Shield Training - In-Service 2003-2004 |
| 1055 | Sandry e-mail to Lappen dated 4/16/2015 |
| 1056 | MacGillis Report with Curriculum Vitae |
| 1057 | MacGillis handwritten notes |
| 1058 | CIRB Report |

| | |
|---|---|
| 1059 | Email to MacGillis from Lappen 1/29/2015 |
| 1060 | Email to MacGillis from Lappen 2/4/2015 |
| 1061 | Email to IAD from Lappen re: MacGillis 2/26/2015 |
| 1062 | Email from MacGillis to Lappen 3/24/2015 |
| 1063 | Email from MacGillis to Lappen 3/27/2015 |
| 1064 | Email from MacGillis to IAD/KW 3/30/2015 |
| 1065 | Complete critical incident file 10-0532 (Dkt. No. 95-2) |
| 1066 | Property Control/Property Sheet (MPD00313-314; Dkt. No. 95-4) |
| 1067 | Orders for Detention/Release (Dkt. No. 95-7) |
| 1068 | CPR Training video cover 2001-2009 (Dkt. No. 95-9) |
| 1069 | In-service training powerpoint for first responders (Dkt. No. 95-10) |
| 1070 | Timeline of Events on 9/13/2010 (based on Incident Report) (Dkt. No. 95-11) |
| 1071 | 24-40 Hour Temporary Holding Facility Course -- Instructor version, Student version, & Powerpoint (Dkt. Nos. 95-13 to 95-18) |
| 1072 | MacGillis CV - Current |
| 1073 | Waldron Expert Opinion with Curriculum Vitae (Dkt. No. 72-2) |
| 1074 | Prevot Resume |
| 1075 | Prevot Schedule of Fees |
| 1076 | Prevot Expert Report (Dkt. No. 72-1) |
| 1077 | Investigative Report (Medical Examiner) |
| 1078 | CD containing autopsy photos |
| 1079 | Hand notes taken on scene |
| 1080 | Hand notes made during video viewing |
| 1081 | Bates Milwaukee County 0463 |
| 1082 | Demographic Report |
| 1083 | County Policy Legal Duty of Care |
| 1084 | Poulos CV - Current |
| 1085 | Allen, Warren deposition transcript |
| 1086 | Arndt, Anthony deposition transcript |
| 1087 | Ayala, Alexander (Part I) deposition transcript |
| 1088 | Ayala, Alexander (Part II) deposition transcript |
| 1089 | Bell, Stephon deposition transcript |
| 1090 | Borman Jr., Dale deposition transcript |
| 1091 | Bungert, Rick deposition transcript |
| 1092 | Coogan MD, Paul deposition transcript |
| 1093 | Davis, Marlon deposition transcript |
| 1094 | Diaz-Berg, Margarita deposition transcript |
| 1095 | Flynn, Chief Edward deposition transcript |

| | |
|---|---|
| 1096 | Franklin, Marquita deposition transcript |
| 1097 | Garner, Anglia deposition transcript |
| 1098 | Hale, Fatrena deposition transcript |
| 1099 | Holmes, Darius deposition transcript |
| 1100 | Ivy, Jacob (Part I) deposition transcript |
| 1101 | Ivy, Jacob (Part II) deposition transcript |
| 1102 | Jacks, Crystal deposition transcript |
| 1103 | Jahnke MD, Renee deposition transcript |
| 1104 | Jeff, Sheila deposition transcript |
| 1105 | Jones, Shannon deposition transcript |
| 1106 | Kieckbusch, Kelly DVD of deposition |
| 1106a | Kieckbusch, Kelly deposition transcript |
| 1107 | Kimber, Jarod deposition transcript |
| 1108 | Kroes, Corey deposition transcript |
| 1109 | Lee, Luke deposition transcript |
| 1110 | Lopez, Richard deposition transcript |
| 1111 | MacGillis, James deposition transcript |
| 1112 | Menzel, Richard deposition transcript |
| 1113 | Pope-Wright, Monica deposition transcript |
| 1114 | Potterton, Rebecca DVD of deposition |
| 1114a | Potterton, Rebecca deposition transcript |
| 1115 | Poulos MD, Christopher deposition transcript |
| 1116 | Prevot, Robert deposition transcript |
| 1117 | Puechner, Andrew deposition transcript |
| 1118 | Robbins, Karl deposition transcript |
| 1119 | Salinsky, Frank deposition transcript |
| 1120 | Sandry, Michelle deposition transcript |
| 1121 | Santiago, Froilan deposition transcript |
| 1122 | Schmidt, Richard deposition transcript |
| 1123 | Thomas, Harold deposition transcript |
| 1124 | Virgo, Nichole deposition transcript |
| 1125 | Waldron MD, Rachel (Part I) deposition transcript |
| 1126 | Waldron MD, Rachel (Part II) deposition transcript |
| 1127 | Watts, Tina deposition transcript |
| 1128 | Wenzel, Cheryl deposition transcript |
| 1129 | Medical Release Documents From ER |
| 1130 | Detective Fischer Interview of Perry AUDIO CD |
| 1130a | Detective Fischer Interview of Perry Transcript |

| | |
|---|---|
| 1131 | Video from PPS pre-booking hallway |
| 1131a | Video from PPS pre-booking hallway transcript |
| 1131b-l | PPS pre-booking hallway still photos (11 total; b-l) |
| 1132 | Video from PPS booking room 511 |
| 1132a | Video from PPS booking room 511 transcript |
| 1132b-n | Room 511 still photos (13 total; b-n) |
| 1133 | Video from PPS booking room 515 |
| 1133a | Video from PPS booking room 515 transcript |
| 1134 | Video from PPS booking room 516 |
| 1134a | Video from PPS booking room 516 transcript |
| 1134b-i | Room 516 still photos (8 total; a-i) |
| 1135 | Video from PPS booking room 519 |
| 1135a | Video from PPS booking room 519 transcript |
| 1136 | Video from elevator (1) |
| 1136a-d | Elevator 1 still photos (4 total; a-d) |
| 1137 | Video from Elevator (2) |
| 1137a-b | Elevator 2 still photos (2 total; a-b) |
| 1138 | Video from CJF - by door |
| 1138a-f | CJF - by door still photos (6 total; a-f) |
| 1139 | Video from CJF - by desk station |
| 1139a-d | CJF - by desk station still photos (4 total; a-d) |
| 1140 | Diagram of 5th Floor (City Jail) |
| 1141 | Diagram of Basement Sallyport area of City Jail |
| 1142 | Map showing PPS, CJF, MFD & Aurora locations |
| 1143 | Demonstrative Spit Mask |
| 1143a | Photo of demonstrative spit mask |
| 1144a-g | Photos of Perry's spit mask & MPD evidence bag (7 total; a-g; Dkt. No. 90-4) |
| 1145a-e | Cell A-3 Photos (5) |
| 1146 | DVD of Kieckbusch deposition excerpts |
| 1147 | Kieckbusch deposition excerpts transcript |
| 1148 | DVD of Potterton deposition excerpts |
| 1149 | Potterton deposition excerpts transcript |
| 1150 | Medical Records highlighted by Potterton |
| 1151 | Potterton diagram (hand-drawn) |
| 1152 | Jeffrey A. Breall, M.D. Curriculum Vitae |
| 1153 | Jeffrey A. Breall Expert Report |
| 1154 | Chad J. Zawitz, M.D. Curriculum Vitae |
| 1155 | Chad J. Zawitz Expert Report |

The Defendants reserve the right to offer any of the exhibits listed by the other parties and to amend this list based on evidence presented by other parties.

## VI.    Disputes Regarding Exhibits.

The Parties have agreed on authenticity of the vast majority of exhibits offered and therefore it should not be necessary to call authenticating witnesses. Several of the Exhibits offered by the Defendants will be affected by the Courts ruling on Motions in Limine.

**Exhibits 1036-1045.** Defendants proffered exhibits 1036-1045 may relate to the relationship between James Perry and his minor son James Franklin Perry Jr. Plaintiffs object to Exhibit 1041, the Findings of Fact, Conclusions of Law and Judgment of Divorce of James Perry's parents (neither of which is a party to this matter) dated December 13, 1995. Plaintiffs further object to exhibits 1044 and 1045. Exhibit 1044 is James Perry's social security number and state identification card. Exhibit 1045 is James Perry's birth certificate. Neither of these exhibits have any relevancy to the issue in this matter. The Parties agree that if the claims of the minor, James Franklin Perry Jr., are dismissed Exhibits 1036-1045 are not to be admitted in this matter.

**Exhibits 1067, 1130(a) and 1130(b).** Plaintiffs have filed a Motion in Limine to exclude Prior Arrest and Criminal Record of James Franklin Perry. Exhibit 1067 includes Orders for Detention and Orders for Release, which indicate the charges that officials were contemplating charging Perry with. Exhibits 1130(a) and 1130(b) are audio tapes of investigators interviews with James Perry concerning the circumstances of his arrest. If the Court grants the Plaintiffs Motion in Limine to Exclude Prior Arrest and Criminal Record of James Franklin Perry Exhibits 1067, 1130(a) and 1130(b) should be excluded.

Further, Defendants appear to have marked virtually all discovery depositions taken in this matter. Plaintiffs reserve all rights to object to any particular portion of the deposition as a whole depending on its intended use.

Finally, **exhibits 1131a, 1132a, 1133a, 1134a and 1135a** are transcripts of videos, exhibits 1131, 1132, 1133, 1134 and1135 are video excerpts from the Police Processing Section. Plaintiffs object as the transcripts were created by Defendants and their counsel. Further the transcript asserts as [unintelligible] conversations that are undisputed in this matter. The transcript is inadmissible hearsay being offered to prove the truth of the matter asserted. They are neither sworn or certified.

### Depositions.

Plaintiffs intend to present the following Deposition Testimony at Trial as a result of the unavailability of the witness:

1. **Edward Flynn**, P.9, L.7-13; P.9, L.19-25 & P.10, L.1-4; P.32, L.10-21; EX.34 P.37, L.6-13; P.38, L.5-17; P.38, L.19-22 & P.39, L.1; EX.60 P.40, L.10-18; P.41, L.4-15; P.41, L.16-24; P.42, L.1-17; P.43, L.14-25 & P.44, L.1-13; P.45, L.19-25 & P.46, L.1-18; P.47, L.8-22; P.49, L.20-25 & P.50, L.1-2; P.50, L.3-6; P.52, L.5-1; P.55, L.11-14; EX.69 P.62, L.5-19; P.64, L.9-18; P.75, L.24-25 & P.76, L,1-4; P.76, L.20-25 & P.77, L.7-13; P.82, L.5-10; P.83, L.6-17; P.83, L.19-22; EX.53 P.83, L.23-25 & P.84, L.1-9; P.88, L.11-25 & P.89, L.1-3; P.96, L.17-23; P.97, L.17-25 & P.98, L.1-9; P.99, L.5-25; P.100, L.14-25 & P.101, L.1-8; P.101, L.9-18; P.103, L.10-18; P.103, L.19-25; P.104, L.1-11; P.104, L.12-23; P.104, L.24-25 & P.105, L.1-6; P.105, L.7-25 & P.106, L.1-16; P.106, L.24-25 & P.107, L.1-16; P.106, L.5-16; P.107, L.9-12; P.107, L.9-20; P.109, L.2-25 & P.110, L.1-18; P.111, L.15-24; P.112, L.3-16; P.113, L.21-25 & P.114, L.1; P.114, L.2-6; P.114, L.21-25 & P.115, L.1-7; P.116, L.11-18; P.119, L.9-21; P.122, L.20-24; P.127, L.22-25 & P.128, L.5-6; EX.2 P.126, L.10-25 & P.127, L.1; P.135, L.2-5; P.135, L.6-11; P.136, L.7-12; P.136, L.14-23; EX.72 P.138, L.24-25 & P.139, L.1-3;

2. **KELLY KIECKBUSCH**

P.3, L.13-25 & P.4, L.1-4; P.5, L.3-24; P.9, L.2-25 & P.10, L.1-23; P.26, L.24-25 & P.27, L.1-23; P.28, L.3-8;P.11, L.5-17; P.29, L.5-24 & P.30, L.1-25; P.31, L.1-25 & P. 32, L.1-6; P.12, L.6-25; P.13, L.1-16; P.15, L.19-21; P.16, L.5-15 & P.17, L.10-25 & P.18, L.1-21; P.19, L.20-25 & P.20, L.1-16; P.21, L.5-15; P.22, L.5-19; P.25, L.21-25 & P.26, L.1-23; P.33, L.4-17; P.35, L.1-15 & P.36, L.1-19; P.40, L.4-25 & P.41, L.1-11, L.24-25 & P.42, L.1-24; P.44, L.11-25; P.45, L.1-25 & P.46, L.1-25 & P.47, L.1-24 & P.48, L.1-17; P.50, L.7-25 & P.51, L.1-25; P.52, L.1-25 & P.53, L.1-25 & P.54, L.1; P.55, L.20-25 & P.56, L.1-25 & P.57, L.1-25 & P.58,L.1-21; P.59, L.17-22; P.63, L.7-25 & P.64, L.1-25 & P.65, L.1-22; P.69, L.14-22; P.76, L.3-11; P.94, L.9-25 & P.95, L.1-6.

Defendants intend to present the following Deposition Testimony at Trial as a result of the unavailability of the witness:

The City Defendants will play the videotaped deposition testimony of Kelly Kieckbusch, because she is deceased. The video will track the transcript provided to the Court as Exhibit 1147, which contains the original deposition transcript, but with the following redactions:

p. 3, l. 16 through p. 9, l. 1
p. 22, l. 20 through p. 23, l. 1
p. 24, l. 24 through p. 26, l. 23
p. 27, l. 24 through p. 29, l. 11
p. 36, l. 20 through p. 54, l. 1
p. 55, l. 20 through p. 76, l. 11
p. 78, l. 1 through p. 91, l. 15
p. 93, l. 4 through p. 107, l. 16
p. 108, l. 15 through p. 114, l. 1

The City Defendants will play the videotaped deposition testimony of Rebecca Potterton, because upon information and belief, she now lives in Virginia, and is unavailable for trial. The video will track the transcript provided to the court as Exhibit 1149, which contains the original deposition transcript, but with the following redactions:

p. 6, l. 11 through p. 7, l. 6
p. 7, lines 12-24

p. 11, l. 19 through p. 12, l. 17
p. 13, l. 11 through p. 14, l. 12
p. 14, l. 22 through p. 18, l. 19
p. 20, lines 1 – 17
p. 26, l. 11 through p. 27, l. 12
p. 49, lines 1 – 20
p. 50, l. 7 through p. 52, l. 22
p. 53, l. 11 through p. 56, l. 9
p. 60, l. 15 through p. 64, l. 7
p. 66, l. 11 through p. 67, l. 11
p. 68, l. 23 through p. 69, l. 11
p. 70, l. 12 through p. 71, l. 13
p. 73, l. 8 through p. 74, l. 3

Plaintiffs object to the presentation of the entirety of the designated testimony as some of the material is not admissible or relevant and the Plaintiffs received the revised designation shortly prior to this report being due. Further, Plaintiffs object to the designated testimony of Potterton as set forth above.

### VII.   Length of Trial.

The parties anticipate the trial will last 7-10 days.

### VIII.   Proposed Voir Dire Questions.

Attached hereto as **Ex. F** are the parties' joint proposed *voir dire* questions.

### IX.   Brief Summary of Underlying Claims and Defenses.

Pursuant to the Trial Scheduling Order, the following summarizes the elements of the parties' respective claims and defenses.

To succeed on its Fourth Amendment failure to provide medical care claims against the Defendants, the Estate must prove by the preponderance of the evidence that the actions of the Defendants were objectively unreasonable. Please see Footnote 1.

### X.   Joint Proposed Substantive Jury Instructions.

Attached hereto as **Ex. G** are the proposed substantive jury instructions with indication as to whether the parties agree or disagree as to a particular instruction. All parties reserve the right to revisit any issues associated with the jury instructions at the close evidence. Attached hereto as **Ex.**

H is the Plaintiff's Brief in Support of James Franklin Perry Jr.'s claim for loss of society and companionship. Defendants have filed a Motion *in Limine* in regard to James Franklin Perry Jr.'s claim for loss of society and companionship, please *See* **Ex.AA.**

### XI.  Joint Proposed Verdict Form.

Attached hereto as **Ex. I** is the Plaintiffs Proposed Verdict form. Attached hereto as **Ex. J** is the City Defendants Proposed Verdict Form. These verdict forms are supported by **Exxs C & D.**

### XII.  Motions in Limine.

Set forth below are the Motions *in limine.* The Motions have been numbered to utilize one sequential numbering system.

1. Plaintiffs' Motion in *Limine* # 1, to exclude evidence, argument and opinions regarding comparative negligence. Attached hereto as **Ex. K** is the parties' joint submission.

2. Plaintiffs' Motion *in Limine* # 2 to exclude prior arrest and criminal record of James Franklin Perry. Attached hereto as **Ex. L** is the parties' joint submission.

3. Plaintiffs' Motion *in Limine* # 3, to exclude evidence regarding affirmative defenses to dismissed state law claims. Attached hereto as **Ex. M** is the parties' joint submission.

4. Plaintiffs' Motion in *Limine* # 4, to exclude evidence and opinions regarding alleged failure of Angela Garner to Provide Medication to James Franklin Perry. Attached hereto as **Ex. N** is the parties' joint submission.

5. Plaintiffs' Motion *in Limine* # 5, to exclude non-expert testimony concerning the medical effects of medication on the decedent Perry. Attached hereto as **Ex. O** is the parties' joint submission.

6. Defendants' Motion *in Limine* # 6, to exclude testimony of Retired Chief Flynn. Attached hereto as **Ex. P** is the parties' joint submission.

7. Defendants' Motion *in Limine* # 7, to exclude testimony/reports/opinions of Michelle Sandry. Attached hereto as **Ex. Q** is the parties' joint submission.

8. Defendants' Motion *in Limine* # 8, to exclude all testimony/reports/opinions of Robert Prevot.

Attached hereto as **Ex. R** is the parties' joint submission.

9. Defendants' Motions *in Limine* #9, to exclude testimony/reports/opinions of Rachel Waldron. Attached hereto as **Ex. S** is the parties' joint submission.

10. Defendants' Motion *in Limine* #10, to exclude any testimony/statements/arguments/evidence regarding any disciplinary matter, or related investigations, involving any MPD officer, including the remaining defendant officers, and including the investigation and discipline stemming from the statement Lt. Robbins made on 9/13/10, while Mr. Perry was being carried to cell A3, about treating prisoners like animals. Attached hereto as **Ex. T** is the parties' joint submission.

11. Defendants' Motion *in Limine* #11, to exclude any testimony/statements/argument/evidence regarding any other event involving current or former MPD officers, including the Frank Judge, Dontre Hamilton, and Derek Williams matters. Attached hereto as **Ex. U** is the parties' joint submission.

12. Defendants' Motion in Limine #12, to exclude any testimony/statements/argument/evidence suggesting that any policy or training of the MPD is improper or unlawful, or that the City failed to adequately investigate in-custody deaths, including the instant case, and/or that the City failed to properly discipline its officers who were involved with in-custody deaths. Attached hereto as **Ex. V** is the parties' joint submission.

13. Defendants Motion *in Limine* #13, to exclude any portion of the images captured by PPS security cameras and/or any other recording equipment which does not relate directly to the PPS processing of Mr. Perry on 9/13/10. Attached hereto as **Ex. W** is the parties' joint submission.

14. Defendants' Motion *in Limine* #14, to exclude any statements/testimony/arguments suggesting that Officer Salinsky and/or Officer Lopez is/are liable for failing to provide medical care to Mr. Perry after they arrived at CJF. Attached hereto as **Ex. X** is the parties' joint submission.

15. Defendants Motion *in Limine* #15, to exclude any statements/testimony/argument/evidence regarding any photograph or other recording depicting Mr. Perry after death, including autopsy photos. Attached hereto as **Ex. Y** is the parties' joint submission.

16. Defendants Motion *in Limine* # 16, to preclude evidence regarding inadvertent destruction of evidence. Attached hereto as **Ex. Z** is the parties' joint submission.

17. Defendants Motion *in Limine* # 17, to dismiss the claim of James Franklin Perry Jr. for the loss of society and companionship of his father. Attached hereto as **Ex. AA** is the parties' joint submission.

## XIII.    Certifications and Index.

1. Certification of Plaintiffs' counsel attached hereto as **Ex. BB.**

2. Certification of Defendants' counsel attached hereto as **Ex. CC.**

Attached hereto as **Ex. DD** is the Index of Exhibits Attached to the Pretrial Report.

Respectfully Submitted,

_____
James J. Gende II
**GENDE LAW OFFICE, S.C.**
WI State Bar No. 1030921
N28W23000 Roundy Dr. Ste. 200
Pewaukee, WI 53072
Telephone:     (262) 970-8500
Facsimile:     (262) 970-7100
email: jgende@jamesgendelaw.com

*Attorney for Plaintiffs*

_____
Christopher P. Katers
**JUDGE, LANG & KATERS, LLC**
WI State Bar No. 1067557
8112 W. Bluemound Rd. Ste. 101
Wauwatosa, WI 53213
Telephone:     (414) 777-0778
Facsimile:     (414) 777-0776
email: jgende@jamesgendelaw.com

*Attorney for Plaintiffs*

_____
Robert E. Barnes
**BARNES LAW LLP**
CA State Bar No. 235919
601 S. Figueroa Street, Suite 4050
Los Angeles, CA 90017
Telephone:     (213) 330-3341
Facsimile:     (310) 510-6225
email: robertbarnes@barneslawllp.com

*Attorney for Plaintiffs*

Respectfully Submitted,

Susan E. Lappen
**Assistant City Attorney**
800 City Hall
200 East Wells Street
Milwaukee, WI 53202
Telephone:     (414) 286-2601
Facsimile:     (414) 286-8550
email: slappe@milwaukee.gov

*Attorney for Defendants*