UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

---

| | | |
|---|---|---|
| ESTATE OF JAMES FRANKLIN PERRY by NATHANIAL CADE, JR., Special Administrator, and JFP, Jr., | ) | |
| Plaintiffs, | ) | Case No. 12-CV-664 |
| vs. | ) | |
| CHERYL WENZEL, et al., | ) | March 12, 2019 8:30 a.m. |
| Defendants. | ) | |

---

**TRANSCRIPT OF PRETRIAL HEARING**

BEFORE THE HONORABLE J. P. STADTMUELLER

UNITED STATES DISTRICT JUDGE

Official Court Reporter:
Richard Derrick Ehrlich, RMR, CRR
richard_ehrlich@wied.uscourts.gov
(414) 290-2642

Proceedings reported by stenotype.
Transcript produced by computer-aided transcription.

A P P E A R A N C E S

For the Plaintiffs:

James J. Gende, II
Gende Law Offices, SC
N28 W23000 Roundy Drive
Suite 200
Pewaukee, WI 53072
262.970.8500
jgende@jamesgendelaw.com

Christopher P. Katers
Judge Lang & Katers, LLC
8112 W. Bluemound Road
Suite 101
Wauwatosa, WI 53213
414.777.0778
ckaters@jlk-law.com

For the City of Milwaukee:

Susan E. Lappen
200 East Wells Street
Room 800
Milwaukee, WI 53202
414.286.2601
slappe@milwaukee.gov

THE CLERK: The Court calls *The Estate of James Franklin Perry, et al., vs. Cheryl Wenzel, et al*., Case No. 12-CV-664, for a final pretrial conference.

May I have appearances beginning with the plaintiffs, please?

MR. GENDE: Good morning, Your Honor. James Gende and Chris Katers for the plaintiffs.

MS. LAPPEN: Good morning, Your Honor. Assistant City Attorney Sue Lappen appears on behalf of the City of Milwaukee, defendants.

THE COURT: Thank you. Good morning, Mr. Katers and Mr. Gende, and good morning to you, Ms. Lappen.

As Ms. Maternowski noted, this matter is once again before the Court this morning for a final pretrial conference following up on a similar conference that we held June 26th of last year.

The Court has had an opportunity to review your updated submissions, and at the outset I'm going to reincorporate all the comments that I made back on June 26th of last year.

First of all, this case will go to the jury on the basis of a Fourth Amendment iteration of the standard to be applied; namely, what is both reasonable and appropriate in terms of medical care.

We have been through this multiple times. I

appreciate the City, but like an Eighth or a 14th Amendment standard, objective reasonableness under the Fourth Amendment is the current standard in the Seventh Circuit. If there be any change, it will have to come from the circuit, not from Judge Stadtmueller.

With regard to expert witnesses, the comments that I made, soon to be a year ago, still hold.

If there is any expert testimony at all in this case, whether it be from Former Chief Flynn, Michelle Sandry, Robert Prevot, Rachel Waldron, Christopher Poulos, James MacGillis, Chad Zawitz, or Jeffrey Breall, it's going to be extremely limited, and the Court will be prepared to rule as to each of these witnesses in the context of the facts that are before the jury at such time as any of these individual witnesses are proffered.

With respect to Mr. Perry, Jr.'s, claim for loss of companionship, I don't believe that's an issue in the case any longer, if it ever was. First of all, there was a request in the -- for the loss of companionship, it was never pled. All state law claims have been dismissed in this case consistent with the Court's order at docket number 300 entered on July 28th of last year; thus, I don't believe any testimony from either Mr. Perry, Jr., or Anglia Garner will be necessary.

Again, I've not ruled formally this morning, but

at least you need to know what the Court's thinking is.

With regard to the trial itself, we have no other trial starting on March 25th, so we have clear sailing.

We'll start in the morning with selecting a jury of seven. There are no other cases scheduled that week, which means that if this case is settled after noon on Thursday of next week, the parties will jointly be responsible for the cost of bringing in a jury panel, which can run anywhere from $2,400 all the way up to $2,800 to $2,900 depending on what the individual juror mileage is. So keep that in mind as you move forward next week.

The Court will conduct the voir dire. We'll select seven jurors. Each side will be entitled to three strikes. The plaintiff exercises its first followed by the Defense exercising its first, and then we move to two and three, meaning plaintiff has the first strike and the Defense has the last.

Jurors will be permitted to take notes during the trial. Each side will be afforded 10 to 12 minutes for opening statements. Closing arguments are limited to 30 minutes. If the plaintiff intends to offer a rebuttal, you must reserve time to do so as a part of your opening.

As the Court indicated last year, all of the exhibits in this branch of the Court are presented electronically. If you need a tutorial on interfacing your

computers, we have our Sony OLED screens. You can contact Mr. Eric Riedjik, R-I-E-D-J-I-K, who is on our IT staff. He may be reached at (414) 297-1210.

In terms of our trial days, we'll be in session from 8:30 to 10:30; break mid-morning for 15 minutes. We'll go from 10:45 until 12:45; 45 minutes break for lunch. We'll resume at 1:30, go until 3:30. Again, 15-minute break at 3:30. Then we'll be in session from 3:45 until 5:45.

The Court is currently working on a set of jury instructions. They will be available for counsel in draft form a week from tomorrow, March 20th, and I would appreciate your collaborating on them between that and the beginning of the trial since the Court's jury instruction conferences are not terribly long since counsel will have benefit of the Court's thinking on the jury instructions well before the case starts.

So against that backdrop, are there any other matters that you, Mr. Gende or Mr. Katers, wish to address this morning?

MR. GENDE: Thank you, Your Honor.

As the Court may be aware, we have resolved a portion of the case with the County. We are expecting a stipulation from them in short order, which will be submitted to the Court for its review and signature, if the Court so desires.

Thank you, Judge.

THE COURT: Surely.

In that regard, Mr. Katers, I would ask that you and Ms. Lappen collaborate to a new case caption, assuming that stipulation is filed and ordered so that the jury understands which defendants are before it.

MR. GENDE: Yes, Your Honor.

THE COURT: We'll clear all of those cobwebs out.

Ms. Lappen, anything more you would like to address this morning?

MS. LAPPEN: Just a few administrative matters, Your Honor. We would like to move boxes and get set up as best we can on Friday before.

THE COURT: Certainly.

MS. LAPPEN: Who will be the point person with the Court staff that we should contact to make those arrangements?

THE COURT: You can contact Ms. Maternowski in our chambers.

You will be in Room 422. The plaintiffs will be in Room 426. Both of those rooms are across the hall. Each side will have their own witness room, conference room. So your witnesses can wait there.

MS. LAPPEN: And, Your Honor, just to coordinate. I have 11 defendants in this matter, and many will be here

for at least three or four days of the trial given that some have been subpoenaed by plaintiffs. We'll be presenting others as well. So would the Court prefer that I have them sit this side of the rail, or can we use the front row behind the rail?

THE COURT: However you would like to do it. Typically, those that are testifying are seated at counsel table that day; otherwise, they're seated behind the rail.

MS. LAPPEN: Okay. Your Honor, with regard to the motions in limine, aside from those motions that relate to expert testimony and the society and companionship claim, there were a couple of motions that I would appreciate some direction from the Court.

One was -- I think now it's numbered Defense motion in limine No. 10. That has to do with the disciplinary investigation regarding former Lieutenant Robbins. Plaintiff's counsel had stipulated that they would not present evidence relative to other disciplinary matters regarding other defendants or other police personnel. The one item that we had a difference of opinion on was that investigatory matter involving Lieutenant Robbins. Specifically, there was an investigation that stemmed from a comment that Lieutenant Robbins was heard making on the hallway video camera that captured some of Mr. Perry's movement that night. While the statement is certainly part

of the factual background for the case, it's our position that this investigation that followed, and ultimately the discipline against Lieutenant Robbins, is not relevant to the case at hand. In addition, even if it were relevant, that information would be unduly prejudicial and unfair to Mr. Robbins as a defendant in this case. So we ask that the Court rule that evidence regarding that investigatory matter not be presented to the jury.

THE COURT: Well, first of all, the statement itself can come before the jury. It's fact.

MS. LAPPEN: Right.

THE COURT: I don't believe, without getting into the weeds, that there's anything in the investigation including the result that is germane to any of the issues in this case; that is, whether or not Mr. Perry was accorded medical care given the totality of the facts and circumstances under the standard that the jury will be called upon to make that determination.

If the plaintiff has a different view, we'll take it up before the trial.

MS. LAPPEN: Thank you, Your Honor.

And, Your Honor, there were just a couple of other matters that were not expert related. One was really a legal matter relative to the Seventh Circuit's decision in this case. We had filed what I believe is now numbered

Defense motion in limine No. 14, and that relates to the Seventh Circuit decision, and it was the City defendant's read that suggested that the Seventh Circuit ruled that the officers could not be held liable relative to medical-related issues at the CJF. And in conjunction with that, the Seventh Circuit had dismissed all of the sheriff's personnel from this action; also had dismissed Officer Bell, who is a Milwaukee police officer who was present as a liaison officer for the CJF. The claims against him were dismissed.

And there was language in the decision that suggested that Officers Salinsky and Lopez could only be held liable relative to their actions up to the point in time that they arrived at the CJF. And opposing counsel felt that there was contra language, or opposing language in the Seventh Circuit decision, and so we sought the Court's guidance regarding that.

THE COURT: Well, the Seventh Circuit's decision speaks for itself in terms of what they found, but we're beyond the legal arguments here. And, factually, I'm not going to stand in plaintiff's way if there are some facts that suggest that the Seventh Circuit got it wrong. So we're just going to have to see what the testimony is during the trial.

I'm not going to be so clairvoyant as to forecast

this morning without everything being in context what the appropriate decision ought to be.

I appreciate your raising it once again, but I'm not in a position on the state of the record before me today to tell you one way or the other.

MS. LAPPEN: And, your Honor, there were just two other issues -- and I raise these concerns just in anticipation of opening statements and so forth.

Defense motion in limine No. 15 had to do with photographs of Mr. Perry after death, and we sought preclusion of those photographs, and plaintiffs could not -- we could not come to an agreement regarding that issue.

The other matter is Defense motion in limine No. 16, and that relates to the destruction of the spit mask that was worn by Mr. Perry back in 2010, and I think it was amply briefed. There's several affidavits explaining what happened with regard to that. It was something that occurred without any knowledge by myself, my office, or the defendants. It had to do with a new computer programming system that they had with the property control section.

In any event, we seek guidance relative to those two issues as well in anticipation for the opening statements.

THE COURT: Well, as to the spit mask, the fact that it's no longer available certainly can be communicated

to the jury, whether by stipulation or otherwise. But beyond the fact of it no longer being available only to no action by anyone associated with the litigation, I don't think one can draw any efforts, inferences, fact.

With regard to the photographs, generally speaking, even though they may be difficult for jurors to accept our view, they don't have to look at them. And if they're troubled by those photographs, some jurors will not even look at them, and some jurors take offense because it's gilding the lily as it were. So things like this cut both ways.

The better course is, of course, to present the facts without having to get into the photographs unless there's some particularized need that the photos would show something that testimony could not capture. So we'll address it.

When it comes to opening statements, the rule in this branch of the Court, if counsel, whether the plaintiff or the Defense, have a good faith basis to believe that some item of evidence will ultimately come before the jury, they're free to make reference; however, they run the risk that ultimately the evidence may be precluded, and that leaves the fact finder in a lurch about why did they tell me about this, and then it never came before us. So it's walking a bit of a tight rope when it comes to matters that

may not come before the jury. So keep all of that in mind. More than that, I cannot say.

Anything further?

Now, in terms of a timeline, based on where you are with your preparations, is there any thought we might finish the case the week of the 25th, or is it likely to go over?

MR. GENDE: Your Honor, with the County out of the equation, I think five days -- we're going to push hard to get it done in five days.

THE COURT: All right.

MR. GENDE: I think it's definitely possible.

THE COURT: On Thursday of that week, I think we can do it during our morning break. I have a settlement hearing in a class action involving wages, and typically these take about 15 minutes. So I don't expect it will intrude on the trial. But other than that, I think we are pretty good to go for the entire week.

MR. GENDE: Your Honor, one comment on moving through the trial quickly. We did subpoena all the City defendants, and we lined them up in a particular order.

In the event that we complete testimony early, I now understand that the defendants will be here, regardless of the time we have subpoenaed them, that should definitely assist in expediting the matter.

THE COURT: Sure. Well, in all sincerity, it really works best if you and Ms. Lappen sit down and preview which witnesses, how long you expect the direct to take, how long cross will take so you got a pretty good idea what every day's timeline is going to look like.

I appreciate it's an adversarial process, but jurors generally don't like it when lawyers stand up at 2:30 in the afternoon and say, "Judge, we've run out of witnesses today."

And it always really derives from the lack of communication between lawyers and the witnesses and your respective position. So see if you can home in on that.

You know what the Court's schedule is, and we're going to give you a full eight hours in the courtroom. So things tend to move along, and jurors love that.

I've been doing this -- June 1st it'll be 32 years, and we talk to the jurors after the case -- not about the merits of the case, but things that they like and don't like -- and they hate it when lawyers stand up and continually repeat themselves or bring in four or five witnesses to ask the same questions.

They get it. It takes four or five key witnesses, but this is going to take 11? I'm not sure. So you need to focus on that because we hear about it all the time from the jurors. We never talk about the merits of the case. We

talk about how we can accommodate them, whether it's parking, whether it's trial day. They love it starting at 8:30, and they're here for a full day, and they get something done, and they're permitted to take notes.

And they love the technology. When exhibits are up on that OLED screen, and everybody is looking at the same thing all the time, and lawyers aren't fumbling around looking for exhibits in a box under counsel table, and everything is loaded on the computer, you queue it up with the witness, and you move on, and jurors love it.

MR. GENDE: I promise, Your Honor, we'll keep it tight.

MS. LAPPEN: Your Honor, we've had quite a few discussions. Mr. Katers had indicated that he had believed that the plaintiff's case would take about four days to complete, and so we've planned our witnesses for Friday and Monday. Our only trouble has been coordinating experts, the doctors. So we have two scheduled for Friday afternoon, two scheduled on Monday, and then one Tuesday morning, and that might very well be our last witness.

Dr. Brill was unavailable, so we actually are going to take his evidentiary deposition next week. So long story short, we really have been communicating well and have made good strides, I think, in making sure that we're efficient with Court time and the jury's time.

THE COURT: Well, the only thing I could ask that both sides do with regard to expert witnesses is take a look at the relevant Rules of Evidence in the Seventh Circuit cases.

I know the plaintiff cited a couple of cases in support of witnesses on police training, and that's fine, but if you look at the actual cases, the Seventh Circuit ruled that the testimony was properly excluded.

So we need to all hopefully get on the same page, and this case has taken an inordinate amount of everyone's time going all the way back to when it was before Judge Randa.

We went through a bit of a streamline process when the case was before Judge Callahan. And I appreciate everybody striving to get to the end of the rope, and it's been a strained process.

MR. GENDE: Your Honor, I agree wholeheartedly with judge's recitation; however, this is a very significant case. The Seventh Circuit decision in the Estate of Perry has been cited nearly 35 times in the short time that it's been out there. So as long and tortious a process it has been, there are some significant national issues that have been decided and may be decided at the trial of this matter.

THE COURT: Sure. Understood.

MR. GENDE: Thank you, Judge.

THE COURT: All right. We'll see you Monday morning, March 25th.

Again, we will have jury instructions and a verdict next Wednesday afternoon, March 20th. And if you have any suggestions once you see the draft, please feel free to submit suggested changes so that when we get to the end of the trial, we'll have a truly workmanlike product.

MS. LAPPEN: Your Honor, one other administrative question. When will the jury pool information be available?

THE COURT: It'll be available Thursday, March 21st.

And, again, this is the only case scheduled for trial that week. So the panel that will be coming in will be summoned for this case. They don't know the case, but you should know we have a panel coming in, and they will be told that the case may last more than a week, and we may have some issues with jurors because schools are out the week of the 25th and some the week after, the following week.

So we're trying to stay ahead of the game so that we have a sufficient pool of jurors from which to select a jury. And if all seven are available at the end, all seven will deliberate.

The Court stands in recess for three minutes.

(Hearing concluded.)

C E R T I F I C A T E

I, Richard D. Ehrlich, a Registered Merit Reporter and Certified Realtime Reporter, certify that the foregoing is a true, complete, and accurate transcript of the proceedings ordered to be transcribed in the above-entitled case before the Honorable J.P. Stadtmueller, in Milwaukee, WI, on March 12, 2019.

s/Richard D. Ehrlich  March 21, 2019

Richard D. Ehrlich, Official Court Reporter